2021 IL App (1st) 182123-U

No. 1-18-2123

Order filed June 22, 2021.

Modified upon denial of rehearing August 3, 2021.

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 09 CR 11997 |
| | ) | |
| BRYAN SAWYER, | ) | The Honorable |
| | ) | Nicholas R. Ford, |
| Petitioner-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

ORDER

¶ 1     *Held*: The trial court properly dismissed defendant's postconviction petition because he did not present new, material, noncumulative evidence to establish a claim of actual innocence or show that he was not culpably negligent for the untimeliness of his claim of ineffective assistance of trial counsel. We affirm.

¶ 2     Defendant Bryan Sawyer appeals from the trial court's second-stage dismissal of his

petition for postconviction relief brought pursuant to the Post-Conviction Hearing Act (Act) (725

ILCS 5/122-1 *et seq.* (West 2016)). Defendant asks this court to reverse the dismissal of his

postconviction petition asserting a claim of actual innocence, and alternatively, a claim of ineffective assistance of trial counsel. For the reasons that follow, we affirm.

¶ 3                                    I.  BACKGROUND

¶ 4      Following a jury trial in 2010, defendant was convicted of being an armed habitual criminal (720 ILCS 5/2-1.7(a) (West 2008)) and of aggravated fleeing or attempting to elude a police officer (625 ILCS 5/11-204.1(a)(1) (West 2008)). Defendant's convictions stemmed from his involvement in a high-speed chase that ultimately resulted in a collision between the vehicle he was driving and a police car. He was sentenced to a term of 18 years' imprisonment for the armed habitual criminal conviction and to a concurrent term of six years' imprisonment for the aggravated fleeing conviction. On direct appeal, this court affirmed defendant's convictions and his prison sentences for those convictions, as will be discussed below. See *People v. Sawyer*, 2011 IL App (1st) 102626-U.

¶ 5      The following is a summary of the evidence detailed in our order disposing of defendant's direct appeal.

¶ 6      Around 10:30 p.m. on June 15, 2009, defendant was driving a blue Chevy Trailblazer when he was pulled over by the police for running a stop sign, located at the corner of Polk Street and Lawndale Avenue in Chicago's west side. His two codefendants, Derrick Jones and Markas Barrett, were also inside the truck that night.[1] Officer Robert Roth testified that when he approached the passenger side of the truck defendant was driving, he observed a "shiny" object on top of the center console which he believed was a gun. Immediately thereafter, however,

---

[1]Codefendants Jones and Barrett were not mentioned in our order disposing of defendant's direct appeal; however, codefendants, along with the parties to this appeal, have stated that they were with defendant in the truck when he was pulled over by the police.

defendant "took off" in the truck, leading Officer Roth and his partner, Officer Mike Metter, on a high-speed car chase.

¶ 7    Meanwhile, other police officers were dispatched to help catch defendant. Sergeant Jeff Truhlar testified that he followed defendant, who was driving more than 70 miles per hour, onto the expressway. At some point, defendant merged into the far left lane of the expressway. Sergeant Truhlar then saw a dark object, which was later identified as a gun, thrown out of the driver's side of the truck. Moments later, another gun was thrown from the driver's side of the truck. Two nine millimeter handguns were ultimately recovered from the expressway.

¶ 8    The police continued to pursue defendant after he got off the expressway. Defendant eventually crashed into a police car near the intersection of Halsted and Taylor Street. Undaunted, defendant exited the truck, then led the police on a foot chase until he was apprehended by Officer Jason Edwards. Defendant and codefendants were subsequently taken into custody.

¶ 9    Defendant was charged with the offenses of armed habitual criminal and of aggravated fleeing or attempting to elude a police officer. At trial, the parties stipulated that defendant had two qualifying offenses for the armed habitual criminal charge.

¶ 10    Notably, defendant, who was free on bond, did not appear on the second day of trial, even though the trial judge had informed him the day before that the proceedings would continue without him and that he could be convicted and sentenced *in abstentia*. The trial judge thus found that defendant's absence was willful and commenced the proceedings without him.

¶ 11    The jury ultimately found defendant guilty of being an armed habitual criminal and of aggravated fleeing or attempting to elude a police officer. The trial court then sentenced defendant to 18 years' imprisonment for the armed habitual criminal conviction and to six years'

imprisonment for the aggravated fleeing or attempting to elude a police officer conviction, to be served concurrently.

¶ 12     On direct appeal before this court, defendant challenged the sufficiency of the evidence for his armed habitual criminal conviction, asserting that the State failed to establish that he constructively possessed a firearm because no evidence showed that he knew there were guns in the truck on the night he was pulled over by the police or that he had exclusive control over the area of the expressway where the guns were recovered. Defendant also challenged the 18-year prison sentence for his armed habitual criminal conviction as being excessive, asserting that it was "double enhanced" because the trial court considered his criminal history in aggravation when it was already considered for the offense.[2]

¶ 13     This court rejected both arguments and affirmed defendant's conviction and sentence, concluding first that there was sufficient evidence for the jury to find that defendant had constructively possessed a firearm. Among other things, we noted that the jury was presented with evidence indicating that defendant "was the driver of a truck in which a police officer saw a gun on the center console and from which two guns were thrown." *Id*. ¶ 17. Additionally, we found that defendant's actions following the collision (*i.e.*, when he ran away from the police after exiting the truck) "provide[d] a reasonable inference of flight to avoid police custody and further support[ed] an inference that [he] possessed the guns." *Id*. We further found that defendant's constructive possession of the guns was not foiled by the fact that they were disposed of on the expressway. See *id*. ¶ 20 (noting that a defendant's physical control of the contraband or of the area where it was recovered is not required for conviction).

---

[2]We note that defendant claimed both of his prison sentences were excessive but focused only on the 18-year prison sentence imposed for his armed habitual criminal conviction. See *People v. Sawyer*, 2011 IL App (1st) 102626-U, ¶ 27.

¶ 14    Finally, we concluded that the trial court did not abuse its discretion in sentencing defendant to 18 years in prison, a term in the middle of the applicable statutory range. *Id.* ¶ 37. In reaching that conclusion, we noted that the trial court could properly consider the fact that defendant had a criminal history, in addition to the nature and circumstances surrounding his past offenses. Our order affirming the trial court's judgment was issued on December 15, 2011.

¶ 15    We note, however, that defendant elected to not file an appeal from that judgment with the Illinois Supreme Court.

¶ 16    On August 21, 2017, defendant filed, through counsel, a petition for postconviction relief, alleging there was newly discovered evidence that established his actual innocence with respect to the armed habitual criminal conviction. Alternatively, defendant alleged that if the evidence was not newly discovered, then his trial counsel was ineffective for not discovering it sooner.

¶ 17    Defendant acknowledged that his ineffective assistance of trial counsel claim was not timely brought but argued that he was not culpably negligent for the untimeliness, as will be discussed in more detail below.

¶ 18    To support his actual innocence claim, defendant attached to the petition affidavits from his two codefendants. The affidavit from codefendant Jones stated that, when he got into the truck defendant was driving on the night in question, he was carrying one of the nine millimeter handguns that was later recovered from the expressway but did not tell defendant that he had it. After the police began chasing them, he gave the gun to codefendant Barrett, who was sitting in the backseat behind defendant, to throw out the window. Codefendant Jones' affidavit further stated that he ultimately pled guilty to his own weapon charges, and that he had been willing to testify on defendant's behalf but was not contacted by defendant's trial counsel.

¶ 19 Likewise, the affidavit from codefendant Barrett stated that, when he got into the truck defendant was driving on the night in question, he was carrying the other nine millimeter handgun that was subsequently recovered from the expressway but did not tell defendant that he had it. Once they were on the expressway, he threw the gun out of the window, then "gestured" to codefendant Jones to hand him his gun. When he did, codefendant Barrett threw that gun out of the window. Codefendant Barrett's affidavit further stated that he pled guilty to his own weapon charge, and that he too had been willing to testify for defendant but was not contacted by his trial counsel or issued a subpoena.

¶ 20 Defendant's petition was also supported by his own affidavit stating that he did not know codefendants had guns in the truck on the night he was pulled over by the police and that he fled initially because he had been drinking and was on probation. Additionally, defendant's affidavit stated that his trial counsel was aware of the information gleaned from codefendants' affidavits but that he "refused to interview them," despite defendant's repeated requests. According to defendant, his trial counsel's decision to not contact codefendants was the reason that he did not appear on the second day of trial: "[o]nce I realized he did not want to help me [I] decided not to come to court because my only defense to prove my innocence was not going to be granted."

¶ 21 The State subsequently moved to dismiss defendant's petition, asserting that it did not allege a viable claim of actual innocence because the information contained in codefendants' affidavits was not newly discovered evidence, among other things. In addition, the State argued that defendant's claim of ineffective assistance of trial counsel was untimely and that defendant was culpably negligent for the lateness. The State further argued that, even if defendant was not culpably negligent, he failed to show that his trial counsel was infective for not calling codefendants to testify at trial.

¶ 22     After hearing arguments from the parties, the trial court granted the State's motion to dismiss, concluding that the information contained in codefendants' affidavits was merely cumulative evidence of reasonable doubt that would not change the result on retrial. The trial court dismissed defendant's postconviction petition on September 6, 2018, and he appealed.

¶ 23                                        II.  ANALYSIS

¶ 24     The Act provides a procedural mechanism through which a criminal defendant can challenge his conviction by showing that his constitutional rights were substantially violated. 725 ILCS 5/122-1 *et seq*; *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006). A petition for postconviction relief is not an appeal of the underlying judgment of conviction; rather, it is a collateral attack upon a prior conviction and sentence based on constitutional claims that were not, and could not have been, adjudicated on direct appeal. *People v. Gonzalez*, 2016 IL App (1st) 141660, ¶ 22. Thus, any claims that were raised and decided on direct appeal will not be considered because they are barred by the doctrine of *res judicata*. *People v. Edwards*, 2012 IL 111711, ¶ 21. Similarly, issues that could have been raised on direct appeal, but were not, will not be considered because they are forfeited. *Id.*

¶ 25     Proceedings under the Act occur in three stages. *Pendleton*, 223 Ill. 2d at 471-72. At the first stage, the trial court reviews a defendant's postconviction petition and may summarily dismiss it if the court determines that it is frivolous or patently without merit. *People v. Greer*, 212 Ill. 2d 192, 203 (1995). If the trial court either concludes that the defendant's petition has set forth the gist of a meritorious claim or fails to act on the petition within 90 days, the petition will proceed to the second stage, at which time counsel will be appointed if the defendant is not already represented. *Id.*

¶ 26 Where, as here, a petition advances to the second stage, the defendant must make a substantial showing that a constitutional violation occurred by supporting his allegations with the trial record or appropriate affidavits. *People v. Flowers*, 2015 IL App (1st) 113259, ¶ 31; see also *People v. Martinez*, 2021 IL App (1st) 190490, ¶ 57 (noting, "[t]his showing is greater than that required to obtain leave to file a successive petition"). Courts must take all well-pleaded allegations that are not positively rebutted by the record as true. *Flowers*, 2015 IL App (1st) 113259, ¶ 31. Additionally, at the second stage, the State may answer the petition or file a motion to dismiss it. *Id*. We review a trial court's second-stage dismissal of a postconviction petition *de novo*, and we may affirm the court's dismissal on any basis in the record, regardless of whether the court relied on that basis or whether its reasoning was correct. *Gonzalez*, 2016 IL App (1st) 141660, ¶ 25.

¶ 27                                        A. Actual Innocence

¶ 28 Defendant first contends that the trial court erroneously dismissed his postconviction petition without an evidentiary hearing because the information in codefendants' affidavits that he did not know they had guns in the truck on the night he was pulled over, conclusively established his actual innocence with respect to the armed habitual criminal conviction.

¶ 29 To succeed on an actual innocence claim, a defendant must present evidence that is (1) newly discovered, (2) material and not merely cumulative, and that (3) is of such conclusive character that it would probably change the result on retrial. *People v. Coleman*, 2013 IL 113307, ¶ 96. Evidence is newly discovered if it was discovered after trial and could not have been discovered sooner through the defendant's exercise of due diligence. *Id*. Evidence is material if it is relevant and probative of the defendant's innocence, and noncumulative if it adds to what the

jury heard at trial. *Id*. Finally, the conclusive element is satisfied if the evidence, when considered along with the trial evidence, would probably lead to a different result. *Id*.

¶ 30    After carefully reviewing the record in this case, we cannot say that the information in codefendants' affidavits constituted newly discovered evidence to support defendant's claim of actual innocence. Foremost, defendant's affidavit, by its own terms, shows that he knew codefendants could have testified that they didn't tell him they had guns in the truck on the night in question, and that he communicated this information to his trial counsel. Codefendants' affidavits also clearly state that they would have testified on defendant's behalf but that his trial counsel never contacted them. Furthermore, there was no attempt to subpoena codefendants and no explanation has been provided as to why subpoenas were not issued. Although defendant claims the fact that codefendants were not contacted shows a lack of due diligence by his trial counsel, not by him, this establishes that the evidence was not acted upon, not that it was newly discovered.

¶ 31    Nevertheless, defendant sets forth a number of reasons why he believes that any attempt to obtain codefendants' testimony at the time of trial would have been futile, in order to establish that the evidence could not have been discovered sooner. We will not speculate as to why codefendants were not contacted or issued subpoenas by defense trial counsel in this case. And, in any event, defendant's argument is belied by the affidavits themselves wherein codefendants stated that they would have testified on his behalf had they been contacted by his trial counsel. This evidence, therefore, was insufficient to satisfy the due diligence requirement.

¶ 32    We note, however, that at oral argument before this court, defense counsel admitted that, at the time of defendant's trial, codefendants had already pleaded guilty to their own weapons charges and the time period to withdraw their guilty pleas had passed, which was contrary to

what defendant stated in his appellate brief. *Cf. Martinez*, 2021 IL App (1st) 190490, ¶ 110 (in rejecting the State's argument that the expert report did not constitute newly discovered evidence because it predated the defendant's conviction, the court noted that, at the time of his trial, expert testimony such as that found in the report, was commonly excluded).

¶ 33    Based on the foregoing, we conclude that defendant failed to present newly discovered evidence to support his claim of actual innocence.

¶ 34    Even if the information contained in codefendants' affidavits constituted newly discovered evidence, defendant's claim fails because the evidence is cumulative and not sufficiently conclusive. Defendant argues that the statements in codefendants' affidavits, taken as true, "completely exonerate [him] of the armed habitual criminal offense" because they prove that he had neither actual nor constructive possession of the guns. Setting aside the fact that defendant exhausted the constructive possession issue on direct appeal, codefendants' statements, at most, demonstrate only that defendant didn't have actual possession of the guns, not that he never saw them in the truck so as to defeat any possibility of his constructive possession. Although complete exoneration is not required, defendant nonetheless is the one using those words. But see *id.* ¶ 112.

¶ 35    In his affidavit, codefendant Jones stated that defendant "never touched nor was *** aware of any guns being in the S.U.V. at any time [*sic*]." Yet, codefendant Jones also stated that he was sitting in the front passenger seat when he gave his gun to codefendant Barrett, who was sitting behind defendant in the back seat, to throw out the window. This indicates that the gun was visible at some point during their exchange; thus, codefendant Jones' statements, taken as true, do not demonstrate that defendant was never aware of it. Likewise, codefendant Barrett stated that "there [was] no way [defendant] could have known" guns were in the truck because

they "were not visible," but also stated that he threw both guns out the rear window, including one that codefendant Jones handed him from the front seat after he "gestured" for it. This too indicates that, at some point while defendant was driving, at least one gun was visible and suggests it was unlikely that he had no idea it was in the truck. While we do not make credibility determinations at this stage (see *People v. Sanders*, 2016 IL 118123, ¶ 42), a trier of fact may also find that this was unlikely.

¶ 36    Regardless, codefendants' affidavits simply provide another explanation of what happened that night because even if codefendants didn't tell defendant about their guns, this doesn't establish that he never saw them in the truck. In other words, this is cumulative evidence that is not so conclusive it would probably change the result on retrial. Accordingly, we conclude that the trial court did not err in granting the State's motion to dismiss on that basis.

¶ 37                              B. Ineffective Assistance of Trial Counsel

¶ 38    As stated, defendant alternatively contends that a third-stage evidentiary hearing is warranted because his postconviction petition substantially established that he was deprived of effective assistance of trial counsel. Specifically, defendant argues that trial counsel was ineffective for failing to either present at trial codefendants' purported testimony that he did not know they had guns in the truck on the night in question, or to discover it sooner because their testimony established that he never possessed the guns; thus, he likely would not have been convicted of being an armed habitual criminal.

¶ 39    To establish that trial counsel provided ineffective assistance, a defendant must show that both counsel's representation fell below an objective standard of reasonableness and that he was prejudiced as a result of counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668 (1984); *Flowers*, 2015 IL App (1st) 113259, ¶ 41. The failure to satisfy either prong defeats an

- 11 -

ineffective assistance of counsel claim. *People v. Patterson*, 192 Ill. 2d 93, 107 (2000). An evidentiary hearing is warranted only when the allegations in the postconviction petition, supported by the trial record and accompanying affidavits, demonstrate a substantial constitutional deprivation. *Flowers*, 2015 IL App (1st) 113259, ¶ 41.

¶ 40    Before we proceed to consider the merits of defendant's argument, however, we must first determine whether his ineffective assistance of trial counsel claim should be dismissed as untimely. The State contends, and defendant concedes, that his petition was not timely brought with respect to this claim.[3] Defendant, nevertheless, asks that we excuse his untimeliness based on alleged miscommunications with his former attorney, who he claims, was supposed to file the petition.

¶ 41    Where, as here, postconviction proceedings are commenced outside the time limitation period set forth in section 122-1 of the Act, the defendant must allege sufficient facts showing that the delay in filing his initial petition was not due to his own culpable negligence. 725 ILCS 5/122-1(c); *Flowers*, 2015 IL App (1st) 113259, ¶ 43. Our supreme court has defined culpable negligence as reckless conduct exceeding ordinary negligence, that involves a disregard of the consequences likely to result from one's actions. *People v. Boclair*, 202 Ill. 2d 89, 106 (2002). Although we construe culpable negligence broadly to ensure that a defendant has a fair opportunity to have his constitutional claim adjudicated, a significant delay in filing may indicate reckless conduct on the defendant's part. *Flowers*, 2015 IL App (1st) 113259, ¶¶ 44-45.

¶ 42    In this case, defendant argued that the untimely filing of his postconviction claim of ineffective assistance of trial counsel was due to a misunderstanding between him and his former

---

[3]Defendant's claim of actual innocence was not subject to the postconviction proceeding time limitations provided in section 122-1 of the Act. See 725 ILCS 5/122-1(c).

attorney, not the result of his own culpable negligence. Defendant's argument was supported by two affidavits: a second one from him and one from his fiancée, Tangela Covens.

¶ 43    Both affidavits stated that, the attorney who represented defendant during the trial and direct appeal proceedings was supposed to prepare his initial petition.[4] The attorney, however, subsequently informed defendant that he could not prepare the petition because it required a claim of ineffective assistance of trial counsel. The affidavits further stated that defendant learned this information in September 2012, which was after the deadline to file his ineffective assistance claim.[5] While this may be true, it does not explain why defendant waited nearly five years after being informed that trial counsel could not prepare his initial petition, to file it. Because defendant has not alleged any additional facts showing that he was not culpably negligent for this significant delay, we fail to see how it was caused by something other than defendant's own recklessness; thus, we cannot excuse his untimeliness.

¶ 44    To the extent defendant asserts that his untimeliness should be excused because codefendants' affidavits were signed after his postconviction petition was due, this evidence supported his claim of actual innocence which was not subject to that time limitation. See 725 ILCS 5/122-1(c) (noting that the time limitations for postconviction proceedings do not apply to actual innocence claims).

¶ 45    Based on the foregoing, we conclude that defendant was culpably negligent in the late filing of his postconviction claim of ineffective assistance of trial counsel. Accordingly, this

---

[4]Interestingly, defendant's first affidavit, which was attached to the petition in support of his actual innocence claim, stated that he did not appear on the second day of trial because his attorney "did not want to help" him (see *supra* ¶ 20). Yet, defendant acknowledged that he tried to retain the same attorney to prepare his initial petition, in arguing that he was not culpably negligent for its untimeliness.

[5]Defendant's postconviction claim of ineffective assistance of trial counsel had to be filed in July 2012, pursuant to section 122-1 of the Act. See 725 ILCS 5/122-1(c).

claim was properly dismissed because it was untimely; thus, we need not address the merits of defendant's argument that trial counsel was ineffective.

¶ 46                                        III.  CONCLUSION

¶ 47      For the reasons set forth above, the judgment of the trial court dismissing defendant's postconviction petition is affirmed.

¶ 48    Affirmed.