2022 IL App (1st) 201206-U

FIFTH DIVISION
December 23, 2022

No. 1-20-1206

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Respondent-Appellee, | ) | Circuit Court of Cook County. |
| | ) | |
| v. | ) | 07 CR 1022 |
| | ) | |
| ANDRE PATTERSON, | ) | Honorable Thaddeus L. Wilson, |
| | ) | Judge Presiding. |
| Petitioner-Appellant. | ) | |

PRESIDING JUSTICE CONNORS delivered the judgment of the court.
Justices Mitchell and Lyle concurred in the judgment.

**ORDER**

*Held:* Petitioner did not receive unreasonable assistance of postconviction counsel where counsel did not amend the *pro se* postconviction petition and did not withdraw as counsel.

¶ 1    Petitioner, Andre Patterson, appeals from the trial court's dismissal of his second-stage postconviction petition. Patterson contends that he was denied reasonable assistance of counsel during his second-stage postconviction proceedings where counsel: (1) failed to amend his *pro se* postconviction petition and adequately respond to the State's motion to dismiss, and (2) did not move to withdraw. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3     On November 9, 2010, Patterson pled guilty to one count of second-degree murder for killing her cellmate in exchange for a 20-year sentence.[1] The incident occurred on December 5, 2006, when Patterson was 17 years old. Prior to accepting her guilty plea, the trial court reviewed with Patterson that: (1) the sentencing range for second-degree murder was 4 to 20 years and that she would receive the sentence of 20 years plus a 3-year term of Mandatory Supervised Release; (2) her sentence would run consecutive to the sentence to be imposed on Patterson's other pending case; and (3) if Patterson chose to plead guilty, she would be waiving her rights to: a trial by jury, trial by judge, have her lawyer confront and examine the State's witnesses, and have the State prove Patterson guilty beyond a reasonable doubt. Patterson acknowledged that she understood those statements. The trial court then confirmed, prior to accepting Patterson's signed jury waiver, that it had her signature on it and that it was made freely and voluntarily. Patterson stated that it was.

¶ 4     The State then read into the record the following factual basis for the plea:

> "The evidence would show that on December 5, 2006, [Patterson], as well as the victim in this case, were being housed together in cell 1261 on the wing of the Cook County Jail. Both of them were prisoners within the Cook County Jail at that time.
>
> They were in the cell alone together. There is a solid door on the cell, and during the evening hours on that date, [Patterson] then put [her] hands around the victim's neck and strangled him.

---

[1] Patterson identifies as female and will be referred to accordingly in this brief. While her name is now Janiah Monroe, we will refer to her as "Andre Patterson" for the sake of consistency with the record and past orders.

The victim suffered the following injuries as a result of [Patterson's] strangling him. The victim had an abrasion on his right eye, his left cheek, his lips. His neck had numerous abrasions and bruises. He had bite marks on his back and shoulders and abrasions on his wrists and hands. He fractured – had a fracture to his hyoid bone, fracture to his thyroid tissue. He had petechial hemorrhages within the muscle of his throat and hemorrhage of his tongue.

The DNA – there was a positive DNA match to [Patterson] from the bite – one of the bite marks as well as fingernail clippings of the victim. The victim died as a result of those injuries he suffered at the hands of [Patterson]."

¶ 5 Patterson's counsel stipulated that this would be the trial testimony.

¶ 6 The trial court found that Patterson understood the nature of the charge against her, that her plea was freely and voluntarily given, and that there was a sufficient factual basis. The court found her guilty of one count of second-degree murder. Before sentencing Patterson, the court confirmed that she was waiving her right to a presentence investigation and written report. Patterson was then sentenced to 20 years in prison with three years of Mandatory Supervised Release. She did not file a motion to withdraw her guilty plea, or a direct appeal.

¶ 7 On March 24, 2016, Patterson filed a *pro se* postconviction petition arguing a claim of actual innocence based on self-defense and her mental instability. She also argued that her guilty plea was involuntary due to her mental instability and inability to consult with counsel. She claimed that she received incompetent advice of plea counsel and that her plea counsel was ineffective for several reasons, including failing to order a second fitness evaluation and failing to investigate a rape kit that was allegedly performed on Patterson.

¶ 8      On March 24, 2017, the petition was docketed for second-stage proceedings because the court had inadvertently allowed the initial 90-day limit for first-stage dismissal to lapse. A public defender was appointed to represent Patterson.

¶ 9      On April 18, 2017, Assistant Public Defender, Barbara McClure, appeared on behalf of Patterson and indicated to the court that she needed time to order and review the transcripts of the case. On July 18, 2017, McClure told the court that she had received and reviewed the transcripts, and had reviewed Patterson's *pro se* petition, a section 2-1401 petition in the case, and a "closed file" that contained mental health records from the Illinois Department of Corrections. She still needed certain medical records.

¶ 10      On October 24, 2017, McClure informed the court that she had reviewed Patterson's Behavioral Clinical Exams (BCX) and Cook County Jail records but that she was still awaiting notes and records from Cermak. On December 13, 2017, McClure obtained a court order for Patterson's records from River's Edge and Hartgrove psychiatric facilities. On February 21, 2018, McClure informed the court that she would need an expert to review all the medical records since Patterson challenged her fitness and sanity at the time of her plea.

¶ 11      On May 30, 2018, McClure informed the court that Assistant Public Defender, Abby Clough, would be taking over the case. McClure told the court that she had a long conversation with Patterson during which she "advised [her] again of the risks involved in pursuing this petition, and [she] still wishes to proceed, so we are continuing to work and investigate the merits of [her] claims."

¶ 12      On July 11, 2018, Clough told the court that she had gone through hundreds of pages of Patterson's medical records and criminal history at the jail and that she would be reviewing the case with her supervisor about whether she needed to obtain an expert.

¶ 13      On August 15, 2018, Clough reported that she had spoken with an expert who requested two more items before the expert could decide whether to take on the case, which included IDOC records and a conversation with Patterson. Clough said she hoped to arrange the meeting between the expert and Patterson in the next month. Clough stated that petitioner had been given a BCX three times during the pendency of her incarceration, but there was no forensic exam within a year of the plea due to Patterson's history of mental illness, her suicide attempts, and her identifying as transgender.

¶ 14      On January 15, 2019, Clough stated that she received the BCX evaluation from a private attorney in Livingston County, as well as a packet of medical records, and that she needed to find a new expert.

¶ 15      On May 10, 2019, Clough informed the court that her office had approved hiring an expert and that the expert needed about six weeks to review all of the records and meet with Patterson. On July 23, 2019, Clough stated that the expert had finished her evaluation and was able to interview Patterson.

¶ 16      On August 20, 2019, Clough told the court that she had spoken with Patterson, who wanted to raise an additional issue regarding her mittimus and the credit she received.

¶ 17      On October 15, 2019, Clough filed her Illinois Supreme Court Rule 651(c) compliance certificate, stating that: she had consulted with Patterson to ascertain her contentions of deprivations of constitutional rights; she obtained and examined the transcript of her plea and sentencing, transcripts, and medical records; she had read and researched the issues presented in the petition; and she had not prepared a supplemental petition for postconviction relief as the previously-filed petition adequately set forth Patterson's claims.

¶ 18     On January 16, 2020, the State filed a motion to dismiss. In its motion, the State argued that: Patterson's petition was untimely; her allegations of trial court error and due process violations were meritless; the allegations of ineffective assistance of trial counsel did not meet the *Strickland* standards; her claim of actual innocence was baseless; and her allegations should be dismissed because she voluntarily pled guilty.

¶ 19     On March 12, 2020, the court heard arguments on the State's motion to dismiss. The State noted that all of Patterson's BCX reports found her fit, and that Patterson had not presented anything to establish that she was unfit at the time of the plea. Clough acknowledged that she had not amended Patterson's *pro se* petition. She noted that Patterson was a juvenile when she was brought over, and put in an adult prison. She also highlighted Patterson's claim of being attacked "by an adult male who [she] ultimately killed and argues in self-defense." Clough stated that after Patterson pled guilty to second-degree murder, her life "sort of spiraled out of control towards a life in IDOC custody."

¶ 20     On October 26, 2020, the trial court granted the State's motion to dismiss. The court found that Patterson had failed to make a substantial showing of actual innocence where even though she claimed that the victim had attacked her, Patterson's account of what happened "does not address every element of self-defense, especially that Patterson's use of a deadly force was reasonably necessary. Thus, the evidence is far from conclusive in character." The court also noted that Patterson failed to make a substantial showing that she was unfit at the time of her plea since mental illness alone does not equate with unfitness, and where Patterson was found fit for trial in two evaluations conducted in October 2006 and September 2008. Accordingly, the court found that Patterson's "unspecific and unsupported allegations" were insufficient to show that she was unfit at the time of the guilty plea and to overcome the record's showing of fitness.

¶ 21    The court also found that Patterson failed to make a substantial showing of ineffective assistance of trial counsel for failing to request another fitness evaluation since petitioner's allegations did not specify that anything occurred after the 2008 fitness evaluation but before the guilty plea that would have apprised trial counsel to believe that the court had a bona fide doubt of Patterson's fitness. The court further noted that other than making a conclusory claim that the expert witness was inadequate, Patterson failed to provide any other explanation or supporting documents. The court found that Patterson failed to make a substantial showing of insanity because her "sole allegation that she had a history of mental illness is insufficient to make a showing of insanity as a matter of law."

¶ 22    Patterson now timely appeals.

¶ 23                                II. ANALYSIS

¶ 24    On appeal, Patterson contends that she was denied reasonable assistance of counsel during his second-stage postconviction proceedings where counsel: (1) failed to amend Patterson's *pro se* postconviction petition and adequately respond to the State's motion to dismiss, and (2) did not move to withdraw. The State maintains that Patterson cannot rebut the presumption that counsel fulfilled her duties under Rule 651(c).

¶ 25    The Post-Conviction Hearing Act (Act) provides a mechanism for convicted defendants to assert that their convictions resulted from a substantial denial of their constitutional rights. 725 ILCS 5/122-1 (West 2022). A postconviction proceeding is a collateral attack on a conviction, not an appeal of the underlying judgment. *People v. Williams*, 186 Ill. 2d 55, 62 (1999). The purpose of the proceeding is to allow inquiry into constitutional issues relating to the conviction or sentence that were not, and could not have been, determined on direct appeal. *People v. Griffin*, 178 Ill. 2d 64, 72-3 (1997). *Res judicata* bars claims that were raised and decide on

7

direct appeal, and principals of waiver and forfeiture preclude claims that could have been raised on direct appeal but were not. *People v. Blair*, 215 Ill. 2d 427, 443-47 (2005).

¶ 26    At the second stage, counsel may be appointed to an indigent defendant and the State may file a motion to dismiss or an answer to the petition. 725 ILCS 5/122-4, 5 (West 2022). If the court appoints counsel at the second stage, appointed counsel is required to file a certificate showing compliance with Illinois Supreme Court Rule 651(c) (eff. Jul. 1, 2017), namely, stating that appointed counsel has consulted with the defendant, examined the record of trial proceedings, and made any necessary amendments. At this stage, the circuit court must determine whether the petition and any accompanying documentation make a "substantial showing of a constitutional violation." *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). During the second stage, the petitioner bears the burden of making a substantial showing of a constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006).

¶ 27    Relevant to the controversy in this case, it is settled that there is no constitutional right to assistance of counsel during postconviction proceedings. *People v. Cotto*, 2016 IL 119006, ¶ 29. Accordingly, our supreme court has explained, "[t]he right to assistance of counsel in postconviction proceedings is a matter of legislative grace, and a defendant is guaranteed only the level of assistance provided by the [Act]." *People v. Hardin*, 217 Ill. 2d 289, 299 (2005). Our supreme court has concluded that the Act provides a postconviction petition with "reasonable" assistance. *Id*. The reasonable level of assistance provided for by the Act is "less than that afforded by the federal or state constitutions." *Pendleton*, 223 Ill. 2d at 472. The parameters of the reasonable assistance postconviction petitioners are provided under the Act are codified in Illinois Supreme Court Rule 651(c), which states in pertinent part:

8

"The record filed in court shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner, either by mail or in person to ascertain his contentions of deprivation of constitutional right, has examined the record of proceedings at the trial, and has made any amendments to the petition filed *pro se* that are necessary for an adequate presentation of petitioner's contentions."

¶ 28    Fulfillment of the third obligation under Rule 651(c) does not require postconviction counsel to advance frivolous or spurious claims. *People v. Greer*, 212 Ill. 2d 192, 205 (2004). At this juncture, a petitioner is not entitled to "advocacy of counsel for purposes of exploration, investigation and formulation of potential claims." *People v. Davis*, 156 Ill. 2d 149, 163 (1993). Postconviction counsel is only required to investigate and properly present the petitioner's claims – had the legislature intended otherwise, it would have provided for appointment of counsel prior to the filing of the original petition. *Id.* at 164. Counsel's responsibility is to adequately present those claims which the petitioner raises. *Id.* We review *de novo* both the trial court's dismissal of Patterson's postconviction petition without an evidentiary hearing (*Pendleton*, 223 Ill. 2d at 473) and the interpretation of a supreme court rule, including whether counsel fulfilled her duties under Rule 651(c) (*People v. Suarez*, 224 Ill. 2d 37, 41-42 (2007)).

¶ 29    Here, Patterson's counsel filed a certificate pursuant to Rule 651(c), asserting that she: consulted with Patterson; examined the record of trial/plea proceedings including the common law record, forensic clinical evaluations, and the medical records; researched Patterson's claims; and had not filed a supplemental petition because the initial petition provided an adequate presentation of Patterson's contentions.

¶ 30    The filing of a Rule 651(c) certificate gives rise to the presumption that postconviction counsel provided reasonable assistance during second-stage proceedings under the Act. See *People v. Rossi*, 387 Ill. App. 3d 1054, 1060 (2009) (upon the filing of a certificate in accordance with Rule 651(c), the presumption exists that postconviction counsel "adequately investigated, amended and properly presented those claims contained within petitioner's successive postconviction petition"). Accordingly, it falls on the petitioner to overcome that presumption by demonstrating counsel's failure to substantially comply with the duties mandated by Rule 651(c). See *People v. Richardson*, 382 Ill. App. 3d 248, 257 (2008).

¶ 31    Patterson alleges that counsel should have amended the petition "with necessary support for Patterson's *pro se* claim that her plea counsel was ineffective for failing to investigate and present evidence concerning" a rape kit. However, "[a] mere failure to amend the *pro se* petition is not enough to establish inadequacy of representation in the absence of a showing that the petition could have been successfully amended." *People v. Johnson*, 232 Ill. App. 3d 674, 678 (1992). Patterson has pointed to nothing in the record showing that a rape kit exists. Accordingly, we cannot presume the existence of an error which is not affirmatively shown in the record. See *People v. Boshears*, 228 Ill. App. 3d 677, 681 (1992); see also *People v. Johnson*, 154 Ill. 2d 227, 241 (1993) ("In the ordinary case, a trial court ruling upon a motion to dismiss a postconviction petition which is not supported by affidavits or other documents may reasonably presume that postconviction counsel made a concerted effort to obtain affidavits in support of the postconviction claims but was unable to do so.").

¶ 32    The record reveals that counsel informed the court on multiple occasions that she collected and reviewed Patterson's medical records and hired an expert to review the medical records. When the first expert was unable to take the case, counsel hired another expert to review

the medical records. If a rape kit had been performed, it presumably would have been in the medical records. Patterson does not indicate when the rape kit was performed or who performed it on her. Furthermore, the expert met with Patterson, after which counsel indicated that she was going to meet with Patterson again before filing her 651(c) certificate. The record demonstrates that counsel fulfilled all the obligations Rule 651(c) imposes on postconviction counsel. Just because a rape kit was not found by counsel, does not mean that Patterson's claim was frivolous or patently without merit such that counsel should have withdrawn. It merely means that counsel found no further evidence to support Patterson's claim of self-defense.

¶ 33    To the extent that Patterson claims that counsel should have amended the petition, we find the case of *People v. Bass*, 2018 IL App (1st) 152650, to be instructive. In *Bass*, postconviction counsel filed a Rule 651(c) certificate indicating that the petitioner's *pro se* postconviction petition adequately stated his contentions and declined to amend the petition. *Id*. ¶ 7. The State moved to dismiss, and counsel did not file a written response. Rather, counsel stood on the petition but informed the court that he had attempted to obtain witness affidavits and was unsuccessful. *Id*. ¶ 8. The circuit court dismissed the petition. *Id.* ¶ 9. On appeal, the petitioner argued that his postconviction counsel rendered unreasonable assistance by failing to amend his petition to include witness affidavits, to explain the absence of those affidavits, or move to withdraw. *Id*.

¶ 34    In rejecting the petitioner's claims, this court stated that petitioner's argument "begs the question since he presumes (without any support in the record) that counsel's failure to amend his petition was the result of some deficiency in his lawyer's performance rather than the inability to substantiate [his] claims." *Id.* ¶ 14. The court noted that when, after conducting his investigation, the petitioner's lawyer determined that he could not obtain evidence to support it,

11

the petition did not *ipso facto* become frivolous or patently without merit, but nevertheless remained defective, and counsel determined he was unable to cure that defect. *Id.* ¶ 19. The court found that the petitioner "offers nothing to suggest that his lawyer's conclusion was wrong or that he acted unreasonably in declining to amend." *Id*. The court found that the petitioner could not overcome the presumption that attaches to counsel's Rule 651(c) affidavit. *Id.*

¶ 35    Similarly here, we find that counsel's failure to amend was not the result of some deficiency on her performance but rather her inability to substantiate Patterson's claims. Counsel investigated the claims, met with Patterson, hired two separate experts, and was simply unable to find the evidence that Patterson argues would have lent further support to her claims.

¶ 36    We find Patterson's reliance on *People v. Greer*, 212 Ill. 2d 192 (2004), to be unpersuasive. In *Greer*, the appointed attorney found the petitioner's petition to be meritless and asked for leave to withdraw. *Id.* at 194-95. The trial court granted the request. *Id.* The court then dismissed the petitioner's petition *sua sponte*. *Id.* The appellate court then affirmed the trial court's grant of the attorney's leave to withdraw but reversed the court's decision to dismiss the petition *sua sponte*. *Id.* The only issue before the Illinois Supreme Court was whether the trial court erred when it granted the attorney's request for leave to withdraw. *Id.* at 195-96. The Supreme Court found that the trial court properly granted the attorney's request for leave to withdraw, and that "the Act presents no impediment to withdrawal of counsel." *Id.*

¶ 37    While the holding in *Greer* certainly permits an attorney to withdrawal if the record affirmatively rebuts the claims in the postconviction petition, it does not require an attorney to withdraw if that attorney simply cannot find additional evidence to supplement the petition. Here, counsel investigated the claims, hired an expert, spoke to Patterson, and ultimately was unable to supplement the petition with additional evidence. The petition did not *ipso facto*

become frivolous or patently without merit. See *Bass*, 2018 IL App (1st) 152650, ¶ 19. To the extent it remained defective for failing to have the proper evidence attached, counsel determined she was unable to cure that defect. *Id*. Patterson offers nothing to suggest that counsel was wrong or that she acted unreasonably in declining to amend. *Id*. Accordingly, Patterson has not sustained her burden to overcome the presumption that attaches to counsel's Rule 651(c) affidavit.

¶ 38    Patterson nevertheless maintains that if counsel "discovered evidence that rebutted the claim" she had "a duty not to submit the claim to the court and, if none of the other claims in the petition could be shaped into proper legal claims, a duty to move to withdraw." However, we reiterate that because counsel in this case did not find that Patterson's claims in her *pro se* petition were affirmatively rebutted by the record, and therefore frivolous or patently without merit, she was under no obligation to request to withdraw from the case. Accordingly, Patterson's argument that *Bass* was wrongly decided because it rejected the defendant's argument that his counsel's failure to withdraw after discovering his claims were frivolous deprived him of the ability to defend his postconviction petition *pro se*, has no bearing on this case. Counsel in this case did not find the petition to be frivolous, and therefore had no reason to withdraw.

¶ 39                                III. CONCLUSION

¶ 40    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 41    Affirmed.