2023 IL App (1st) 191913-U

No. 1-19-1913

Order filed February 21, 2023

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 14831 |
| | ) | |
| DIONTE SIMMONS, | ) | Honorable |
| | ) | Thomas Joseph Hennelly, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court.
Presiding Justice Lavin and Justice Coghlan concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The second-stage dismissal of defendant's postconviction petition is affirmed over his contention that his postconviction counsel provided unreasonable assistance.

¶ 2   Dionte Simmons appeals from the trial court's order granting the State's motion to dismiss

his petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West

2018)). On appeal, Simmons contends that his postconviction counsel provided unreasonable

assistance and violated Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) when she failed to

attach supporting documents to the *pro se* petition or explain their absence, failed to respond to the state's motion to dismiss orally or in writing, and did not move to withdraw as counsel.

¶ 3    We affirm. Simmons has not demonstrated merit to his *pro se* postconviction claim that trial counsel was ineffective for failing to support his trial strategy of attacking Wolfe's ability to identify the gunman by investigating the lighting conditions of the crime scene and by presenting evidence regarding "weapon focus" and science relating to "misconceptions with identification." Having failed to rebut the presumption of compliance, we cannot find that Simmons's postconviction counsel provided unreasonable assistance.

¶ 4                                    Background

¶ 5    Simmons's conviction arose from the July 11, 2012, shooting of Michael Wolfe. Following arrest, Simmons was charged by indictment with three counts of attempted first degree murder and one count of aggravated battery with a firearm. Private counsel represented him in a bench trial that resulted in his conviction for aggravated battery with a firearm and a sentence of nine years imprisonment. We affirmed on direct appeal. *People v. Simmons*, No. 1-13-2133 (2014) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 6    On direct appeal, Simmons contended that he was not proved guilty beyond a reasonable doubt because Wolfe's identification of him in a photo array was "an infirm single-finger identification lacking any corroboration whatsoever." Simmons further contended that the trial court disregarded crucial evidence by failing to consider that Wolfe was heavily medicated and described himself as "blurry" when he identified Simmons's photo. Finally, Simmons contended that no evidence indicated he had fired the shot that hit Wolfe.

¶ 7     In our order, we found that at the time of the shooting, Wolfe had an adequate opportunity to view Simmons's face multiple times in well-illuminated conditions. We wrote:

"During the third time, after the victim had been shot, Simmons bent over the victim and pointed the gun at his face. They were in such close proximity that the victim could have touched Simmons's face as he attentively viewed Simmons and also observed the black semi-automatic gun. The area was well-illuminated and nothing obstructed the victim's view of Simmons's face. The victim noticed details such as Simmons's shortened left eyebrow and enlarged eyes, as if he were surprised. Moreover, he was certain about the identification and identified Simmons's photograph from an array of nine photographs approximately four days after the shooting. The victim's blurriness from the medication pertained to his problems remembering the exact chronology, not to his eyesight or ability to identify Simmons or Simmons's photograph." *Id.* ¶ 2.

¶ 8     We noted that the credibility of the witnesses, the weight of the evidence, and the resolution of conflicts in the evidence, such as whether Simmons's complexion was dark or medium, were matters for the trial court to decide. We found that Simmons's identification by a single witness sufficed to uphold his conviction, as Wolfe had viewed him under circumstances permitting a positive identification. *Id.* And we rejected his contention that the trial court disregarded crucial testimony. We observed that when trial counsel argued in closing that Wolfe was medicated and "blurry" when he viewed the photo array, the trial court did not strike the argument from the record and said, "All right," and allowed trial counsel to "[g]o ahead" with his argument. *Id.* ¶ 3.

¶ 9     Finally, in response to Simmons's argument that no direct evidence indicates that he was the person who shot Wolfe, we found sufficient circumstantial evidence. We noted that Wolfe saw

Simmons just before he was shot and again immediately after "when he saw Simmons in close proximity with a black, semi-automatic gun in his hand." Also, a detective corroborated that the weapon was a semi-automatic gun. Furthermore, when Simmons learned Wolfe had been hit and was not from the neighborhood, he exclaimed, "[O]h, s***." We concluded that, viewed in the light most favorable to the prosecution, the circumstantial evidence established Simmons shot Wolfe. *Id.* ¶ 4.

¶ 10   In 2014, Simmons filed a *pro se* postconviction petition, claiming that trial counsel was ineffective for failing to (i) conduct an independent investigation of the crime scene, "particularly, as to the lighting conditions in this area consistent in time when the crime occurred"; and (ii) present evidence to support an argument defense counsel made in closing regarding "weapon focus/or the science as it relates to misconceptions with identification."

¶ 11   Simmons argued that although his counsel's trial strategy was to attack Wolfe's ability to identify the man who walked up to him with a gun after he had been shot, counsel did not present evidence to support his theories that the lighting conditions were too dark and that Wolfe's focus was on the gun. Simmons asserted that counsel could have investigated the lighting conditions at the scene or hired a private investigator. In addition, he asserted that because scientific studies have shown significant errors in eyewitness identification due to factors such as low lighting, darkness, and the presence of a weapon, it would have been reasonable for counsel to have secured an expert to help substantiate his arguments regarding weapon focus and misidentification.

¶ 12   Simmons argued that trial counsel's failures prejudiced him, as the State's case was weak. He asserted that the State's case rested on (i) a "questionable photo array identification" (Wolfe admitted he did not know or see who shot him), (ii) the evidence was close, and (iii) counsel's

deficient performance which "upset[ ] the balance between the adversarial testing." He maintained that had counsel investigated the scene, he "would have been well informed with the facts and circumstances in the instant case, to better argue, or to avoid it," and an expert would have assisted counsel in developing a meaningful defense. Finally, Simmons claimed that appellate counsel failed to raise "meritorious issue(s) on direct appeal that could have and should have been raised."

¶ 13    Simmons attached an affidavit to his petition averring, "I have pictures of the nighttime area of this particular area identified as the crime scene, however, due to the holiday months, mail is slow, however, I do wish to supplement the record with those exhibits once I receive them."

¶ 14    The circuit court docketed Simmons's petition and appointed the office of the Cook County Public Defender to represent him in March 2015. Counsel filed a certificate under Rule 651(c) three-and-a-half years later. Counsel certified that she had consulted with Simmons by phone to ascertain his contentions of deprivations of constitutional rights and had obtained and examined the pertinent portions of the report of proceedings and common law record. And she had examined Simmons's *pro se* petition and "made the amendments to his petition for a necessary and adequate presentation of [his] contentions." An amended petition was not filed.

¶ 15    The State filed a motion to dismiss Simmons's petition, arguing that (i) trial counsel's based decisions on reasonable trial strategy, (ii) Simmons was unable to show prejudice by those strategies, and (iii) he had failed to make a substantial showing that appellate counsel was ineffective. The State further argued that *res judicata* barred attempts to re-litigate Wolfe's identification. In the course of making its arguments, the State stated that Simmons "failed to provide any photographs of the crime scene, or any other reports or evidence" to support his claim

that trial counsel should have conducted an independent investigation and taken photos and Simmons "included no affidavits or scientific articles about this 'weapon focus' argument."

¶ 16    Counsel informed the court that she had reviewed the motion to dismiss, sent a copy to Simmons, and would not be filing a response. At the hearing postconviction counsel said:

> "In this matter, I filed 651C Certificate [*sic*]. I had the opportunity to review the record and the report of proceedings. I actually went down and visited with my client. I spoke to him numerous times on the phone.
>
> I spoke to the trial attorney in this matter and the appellate attorney in this matter. I did not file a supplemental or amended petition and we stand on [Simmons's] argument."

¶ 17    The trial court dismissed the petition in a 12-page written order, finding "that the issues raised by [Simmons] are frivolous and patently without merit." Regarding the claim of ineffective assistance of trial counsel, the trial court found that while Simmons had "recharacterize[d] his claim as an ineffective assistance of counsel claim, it is clear he is attempting to re-litigate the issue of the victim's identification of [him] following the shooting." Noting that this court had considered and rejected the claim that Wolfe could not accurately identify the shooter, the trial court held that Simmons could not "re-litigate this issue under the guise of an ineffective assistance claim," and the doctrine of *res judicata* barred the claim.

¶ 18    The trial court wrote "[t]o the extent this claim is not procedurally barred, it fails because it is meritless." In the course of explaining its finding that the claim lacked merit, the trial court noted, among other things, that Simmons had proffered no photos to support his argument that trial counsel had not adequately investigated the lighting conditions of the crime scene area and no affidavits from any potential experts to support his argument that trial counsel should have

presented testimony regarding "weapon focus" or "science on the misconception with identification."

¶ 19                                 Analysis

¶ 20    On appeal, Simmons contends that postconviction counsel provided unreasonable assistance and violated Rule 651(c) where she failed to attach supporting documents to the *pro se* petition or explain their absence, failed to respond to the State's motion to dismiss orally or in writing and did not move to withdraw as counsel.

¶ 21    At the second stage of postconviction proceedings, appointment of counsel is a statutory, rather than constitutional, right. 725 ILCS 5/122-4 (West 2014); *People v. Suarez*, 224 Ill. 2d 37, 42 (2007). Under the Act, petitioners are entitled to a "reasonable" level of assistance of counsel. *People v. Perkins*, 229 Ill. 2d 34, 42 (2007). Rule 651(c) imposes three duties on appointed postconviction counsel to ensure this level of assistance. *Id.* Under the rule, either the record or a certificate filed by the attorney must show that counsel (i) consulted with the petitioner to ascertain his contentions of constitutional deprivations, (ii) examined the record of the trial proceedings, and (iii) made any amendments to the filed *pro se* petition necessary to present the petitioner's contentions adequately. Ill. S. Ct. R. 651(c) (eff. July 1, 2017); *Perkins*, 229 Ill. 2d at 42.

¶ 22    The filing of a Rule 651(c) certificate creates a rebuttable presumption that postconviction counsel provided reasonable assistance and substantial compliance with the rule is sufficient. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. A defendant bears the burden of overcoming the presumption of reasonable assistance by demonstrating his attorney's failure to substantially comply with the duties mandated by Rule 651(c). *Id.* Our review of an attorney's compliance with

Rule 651(c), and the dismissal of a postconviction petition without an evidentiary hearing, is *de novo*. *Id.* ¶ 17.

¶ 23 Here, postconviction counsel filed a Rule 651(c) certificate. Therefore, a presumption exists that Simmons received reasonable assistance of postconviction counsel. *People v. Hayes*, 2016 IL App (3d) 130769, ¶ 12.

¶ 24 Simmons points out that the presumption of reasonable assistance created by the filing of a Rule 651(c) certificate may be rebutted by the record and that Rule 651(c), counsel requires counsel make "any amendments" to the petition that would be necessary for an adequate presentation of his contentions. He asserts that counsel failed to satisfy this requirement where she did not attach photos, affidavits, or other documents that were necessary to present his claims adequately; did not explain their absence; did not submit a written response to the State's lengthy motion to dismiss, which he notes identified documents missing from the petition; and did not orally argue or even reference his postconviction claims at the hearing on the State's motion.

¶ 25 Simmons argues that where counsel handled his case for over four years, she had sufficient time to attach, "at the very least," a nighttime photograph of the area of the crime scene and either an affidavit from an expert who could explain the significance of the problems with Wolfe's identification, or "readily available scientific articles and cases that discuss the issue of eyewitness identification." In light of counsel's failures, she "show[ed] no effort to advocate for [him]" and that her representation amounted to nothing more than "an empty formality." Finally, citing *People v. Greer*, 212 Ill. 2d 192, 205 (2004), Simmons argues that if counsel had determined his claims lacked merit, she should have sought to withdraw rather than stand on the petition.

¶ 26    After carefully reviewing the record, we find that Simmons has failed to overcome the presumption that he received reasonable assistance of counsel as contemplated by Rule 651(c). Rule 651(c) aims to ensure that postconviction counsel shapes the defendant's claims into a proper legal form and presents them to the court. *Perkins*, 229 Ill. 2d at 44. To this end, postconviction counsel need not advance non-meritorious claims on a defendant's behalf. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006). Thus, whether counsel acted reasonably depends on if Simmons's postconviction claims had merit. See *Profit*, 2012 IL App (1st) 101307, ¶ 23.

¶ 27    To establish that postconviction counsel provided unreasonable assistance, Simmons must demonstrate that a petition amended in the manner he suggests would have stated a case on which relief could be granted. See *People v. Vasquez*, 356 Ill. App. 3d 420, 425 (2005) ("to establish that postconviction counsel provided inadequate representation, defendant must show that the petition could have been amended to state a case upon which relief could be granted"). Here, the question is whether second-stage relief would be appropriate on Simmons's postconviction claim that trial counsel was ineffective for failing to support his trial strategy of attacking Wolfe's ability to identify the gunman by investigating the lighting conditions of the crime scene and presenting evidence on "weapon focus" and science relating to "misconceptions with identification."

¶ 28    We cannot find that the petition could have been amended to make a substantial showing that trial counsel was ineffective in these respects.

¶ 29    As noted by the trial court's written order and the State in its brief, Simmons's underlying claim of ineffective assistance of trial counsel—which he asserts postconviction counsel should have amended and supported with photos, affidavits, scientific articles, a written response, and oral argument—at its core, challenges Wolfe's identification of him. Simmons's postconviction

claim of ineffective assistance directly relates to the issue of whether Wolfe had an adequate opportunity to view the gunman at the scene and the capacity to identify Simmons's photo in the hospital. This issue was raised and decided on direct appeal.

¶ 30    As discussed, on direct appeal, Simmons contended that Wolfe's identification of his photo while in the hospital and "heavily drugged" days after the shooting was "an infirm single-finger identification lacking any corroboration whatsoever." And further, the trial court failed to consider Wolfe was heavily medicated and described himself as "blurry" when he identified Simmons's photo.

¶ 31    We rejected Simmons's challenge to the sufficiency of the evidence, finding that Wolfe had an adequate opportunity to view Simmons's face multiple times "in well-illuminated conditions." We highlighted that (i) after Wolfe was shot, Simmons bent over him and pointed a gun in his face; (ii) Wolfe and Simmons were in close proximity so that Wolfe "could have touched Simmons's face as he attentively viewed Simmons and also observed the black semi-automatic gun"; (iii) the area was well-illuminated and nothing obstructed Wolfe's view of Simmons's face; (iv) Wolfe noticed details, including Simmons's shortened left eyebrow and enlarged eyes; (v) Wolfe was certain about the identification and identified Simmons's photo from an array about four days after the shooting; and (vi) Wolfe's being "blurry" from the medication pertained to his problems remembering the exact chronology of his conversations with the police, not to his eyesight or ability to identify Simmons or Simmons's photo.

¶ 32    In postconviction proceedings, the doctrine of *res judicata* bars the consideration of issues already raised and decided on direct appeal. *People v. Blair*, 215 Ill. 2d 427, 443 (2005). If the doctrine of *res judicata* postconviction bars a postconviction claim, it has no basis in law and,

therefore, is without merit. *Id.* at 445. Simmons challenged Wolfe's identification on direct appeal, and we rejected his arguments. Thus, *res judicata* bars Simmons's postconviction challenge to Wolfe's identification, despite being recharacterized as a claim of ineffective assistance of trial counsel for failure to present exculpatory evidence. See *People v. Williams*, 186 Ill. 2d 55, 62 (1999) ("A postconviction petitioner may not avoid the bar of *res judicata* simply by rephrasing issues previously addressed on direct appeal."). Even if postconviction counsel had amended the petition as Simmons suggests, *res judicata* would have applied, and the petition would not have stated a case on which relief could be granted. See *Vasquez*, 356 Ill. App. 3d at 425.

¶ 33    We are mindful of Simmons's argument that, under *Greer*, 212 Ill. 2d at 205, if postconviction counsel had concluded that his claims lacked merit, she should have moved to withdraw. We find *Greer* distinguishable, however. In *Greer*, the *pro se* petition advanced to the second stage of postconviction proceedings by default because it was not brought to the trial court's attention within 90 days of filing. *Id.* at 199-200. The attorney appointed to represent the defendant filed a motion to withdraw as counsel, indicating he could find no basis to present a meritorious issue for review. *Id.* at 200. The circuit court granted the motion and dismissed the petition. *Id.*

¶ 34    Before our supreme court, the defendant contended that the Act did not authorize withdrawal and that the order allowing his appointed attorney to withdraw deprived him of his statutory right to counsel. *Id.* at 195-96, 207. The supreme court disagreed. It observed that because the defendant's petition advanced to second-stage proceedings by default, "there was never an initial determination as to [the] merits of the petition." *Id.* at 200. The *Greer* court recognized a lawyer appointed to represent a defendant on a postconviction petition that escaped first-stage

review may determine, after fulfilling the Rule 651(c) obligations, that the petition is frivolous and patently without merit. *Id.* at 206-07. It found fulfillment of the third obligation under Rule 651(c), to amend a petition as necessary for an adequate presentation of the petitioner's contentions, does not require postconviction counsel to advance frivolous or spurious claims. *Id.* at 205. Under these circumstances, nothing in the Act required an attorney to do so, and ethical obligations prohibited them as well. *Id.* at 209. The court concluded the Act presented no impediment to withdrawal where postconviction allegations were frivolous and patently without merit. *Id.* at 211-12.

¶ 35    Unlike *Greer*, Simmons's petition did not advance to second-stage postconviction proceedings by default. Instead, the trial court concluded at the first stage that Simmons's petition was not frivolous and patently without merit, docketed the petition for second-stage proceedings, and appointed counsel. Counsel then consulted with Simmons multiple times, obtained and examined the report of proceedings and common law record, spoke with the trial and appellate attorneys, and decided to stand on the petition.

¶ 36    Simmons's petition "did not *ipso facto* become frivolous or patently without merit" when counsel evaluated it. See *People v. Bass*, 2018 IL App (1st) 152650, ¶ 19. Where counsel did not find the petition to be frivolous or patently without merit, she was not required to withdraw under the reasoning of *Greer*. See *id.* ¶ 22; see also *People v. Patterson*, 2022 IL App (1st) 201206-U, ¶ 39 ("because counsel in this case did not find that [the defendant's] claims in her *pro se* petition were affirmatively rebutted by the record, and therefore frivolous or patently without merit, she was under no obligation to request to withdraw from the case"). Simmons's argument fails.

¶ 37    Affirmed.