2023 IL App (1st) 201183

FIFTH DIVISION
March 10, 2023

No. 1-20-1183

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Respondent-Appellee, | ) | |
| v. | ) | No. 06 CR 21369-01 |
| GERSON CARNALLA-RUIZ, | ) | Honorable Aleksandra Gillespie, |
| Petitioner-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Lyle and Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held:* We affirm the second stage dismissal of the petitioner's postconviction petition over his contention that postconviction counsel provided unreasonable assistance in violation of Illinois Supreme Court Rule 651(c).

¶ 2    Petitioner Gerson Carnalla-Ruiz appeals the second stage dismissal of his postconviction petition. He argues that his postconviction counsel provided unreasonable assistance in violation of Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), by failing to make a concerted effort to contact petitioner's son, who provided a statement alleging that, similarly to petitioner, he also experienced police coercion to provide a statement following petitioner's arrest. Petitioner also

contends that postconviction counsel only provided a conclusory response to contest the State's motion to dismiss his petition. We affirm.

¶ 3                                                    BACKGROUND

¶ 4      We discuss only the facts necessary for the disposition of the issues in this appeal. A more thorough recitation of the facts is included in our order on petitioner's direct appeal. See *People v. Carnalla-Ruiz*, 2013 IL App (1st) 092302-U.

¶ 5      Petitioner was indicted for acts of sexual penetration he committed upon his ten-year-old, disabled daughter, D.R., who suffered from spina bifida and was confined to a wheelchair. After hearing evidence which included extensive and explicit testimony from D.R., who was 14 years old at the time of trial, a jury convicted petitioner of three counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2005)), and the circuit court sentenced him to a total of 40 years' imprisonment. On direct appeal, petitioner argued that: (1) the State failed to prove the *corpus delicti* of two of the three counts of predatory criminal sexual assault of a child; (2) the court improperly admitted other crimes evidence; (3) trial counsel was ineffective; (4) correction of the mittimus was necessary to reflect the correct sentence imposed for each count and to correct the number of days of presentence credit; and (4) he was entitled to have his fines, costs, and fees either vacated or reduced.

¶ 6      Initially, we affirmed in part, reversed in part, and modified in part, the circuit court's judgment. See *People v. Carnalla-Ruiz*, 1-09-2302 (June 30, 2011) (unpublished order under Supreme Court Rule 23), however, our supreme court entered a supervisory order directing this court to vacate the previously entered Rule 23 order and reconsider our decision in light of *People v. Lara*, 2012 IL 112370. After vacating our previous order, we affirmed the judgment of conviction as to count IV and corrected the mittimus to reflect the correct sentence imposed for

each count and to reflect the correct number of days of presentence credit. We also vacated and reduced various fines. See *People v. Carnalla-Ruiz*, 2013 IL App (1st) 092302-U.

¶ 7    On April 22, 2015, petitioner filed a *pro se* petition for postconviction relief, arguing that his trial counsel was ineffective for failing to call his son, Jair, to testify about police abuse and coercion allegedly committed against Jair, to support petitioner's claim that the police coerced him into confessing and providing a signed statement following his arrest. He also contended that trial counsel was ineffective for failing to (1) argue his constitutional rights were violated during the questioning of D.R.; (2) call witnesses regarding a previous Department of Children and Family Services (DCFS) investigation of alleged abuse of Jair that resulted in an unsubstantiated finding; (3) contest a search of his vehicle; and (4) consider his pretrial request to prove that D.R.'s statements following her victim sensitive interviews (VSI) were the products of coercive methods. In addition, petitioner reasserted his prior arguments that his statement to police was produced by improper methods. He also argued that the State concealed exculpatory evidence within D.R.'s counseling records and failed to submit jury instructions on unspecified lesser-included offenses. Petitioner also claimed his constitutional right to confront D.R. was violated when he could not hear all her testimony. Finally, he argued that appellate counsel was ineffective for failing to raise the aforementioned issues and make additional arguments contesting the sufficiency of the evidence for count II.

¶ 8    The postconviction petition included two separate written statements from Jair, neither of which were sworn or notarized. Jair alleged police misconduct committed against him coinciding with his father's arrest, stating that police officers demanded he sign a statement regarding his father and that he would not be released from custody unless he signed the statement. Jair claimed that the officers laughed at him before he was forced to walk home barefoot and half-naked. Jair

stated that due to concerns for his safety, he fled to California. Petitioner also attached an "affidavit of correction" concerning, among other things, his signed statement to police, *Miranda* waiver form, the VSI report, DCFS letters and reports, the grand jury transcript, an affidavit from an inmate regarding prison conditions, and a Chicago Police Department general order describing directives for interrogations.

¶ 9 During a May 29, 2015 postconviction hearing, the circuit court stated that it reviewed the petition and appointed counsel to represent petitioner. On August 7, 2015, Cook County Assistant Public Defender (APD) Gwyndolette Ward-Brown appeared as petitioner's postconviction counsel. Private counsel retained by petitioner's brother declined to take the case. APD Ward-Brown told the court that she would order the trial transcripts and begin reviewing the case.

¶ 10 In the following months, APD Ward-Brown reviewed the record and transcripts, spoke to petitioner, and investigated his claims. She informed the circuit court that petitioner "has given me three witnesses to talk to, and I put in an investigation request for those."

¶ 11 On April 13, 2018, APD Ward-Brown filed the first of two Rule 651(c) certificates. She certified that she consulted with petitioner by mail to ascertain his contentions of deprivations of his constitutional rights. She also certified that she obtained and examined the report of proceedings in his case and that she determined the petition as written adequately represented his constitutional claims and deprivations. For those reasons, she stated that she would not supplement the petition.

¶ 12 On May 24, 2018, petitioner filed a motion for representation by a bar association attorney and an anticipatory "notice of appeal" for the denial of his motion for bar attorney, "where his Post-Conviction was denied by the Circuit Court of Cook County," although the court had yet to rule on his petition. Petitioner sought representation from a bar association attorney in Milwaukee

because the APD was "not equipt [*sic*] to handle the nature[] of my case." Petitioner claimed that the APD did not consult him by mail and that none of his letters were answered. He argued that the APD was not supporting his postconviction petition.

¶ 13    Petitioner attached to his motion an "affidavit of correction," which included modified versions of the first and last page of Jair's previously submitted 13-page statement. The top of the first page included the following hand-written language:

> "I, Jair Omar Ruiz Uribe, now known as Tyku Carnalla, being first duly Affirmed upon my word, depose and state that the following matters are both true and correct upon personal knowledge and belief, and if called as a witness, I am competent to testify hereto concerning my father, and of each person named in here."

¶ 14    A California "all-purpose acknowledgement form" was attached to the last page of Jair's statement. The form included a stamp from a notary public in California, dated January 29, 2019, stating that Jair personally appeared and "proved to me on the basis of satisfactory evidence to be the person[] whose name[] is subscribed to the within instrument and acknowledged to me that he [] executed the same in his [] authorized capacity[], and that by his [] signature[] on the instrument the person[], or entity upon behalf of which the person[] acted, executed the instrument." The notary identified by a checked box on the form that the type of document executed was a handwritten, 13-page statement. The top of the form included specific language set forth separately within an outlined, enclosed box, stating "[a] notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document."

¶ 15 On September 21, 2018, APD Ward-Brown filed a second Rule 651(c) certificate, which mirrored the same language as the first certificate. She again certified that she would not be supplementing the petition.

¶ 16 On March 29, 2019, the State filed its motion to dismiss the postconviction petition, arguing that petitioner failed to make a substantial showing that his constitutional rights were violated because his claims were not supported by proper affidavits. The State noted that petitioner submitted two documents purportedly signed by Jair, but that neither document was sworn, notarized, nor authenticated in any way. The State argued that even if the circuit court considered Jair's statements, they offered no new evidence to challenge petitioner's conviction. Neither of the statements addressed any allegation of sexual abuse committed by petitioner.

¶ 17 Petitioner filed a 33-page *pro se* response to the State's motion to dismiss. He restated his original claims and also included a January 22, 2019 affidavit from himself stating that the authorities tricked and forced him into giving a false confession. He argued that his allegations of police misconduct were supported by the treatment of Jair. Petitioner again attached the modified pages of Jair's statement along with the California all-purpose acknowledgement form. In addition, petitioner restated his complaints about postconviction counsel and renewed his motion for appointment of a bar association attorney.

¶ 18 On August 9, 2019, the circuit court heard argument on the State's motion to dismiss. The State argued that petitioner's claims were conclusory and lacked documentation to support his claims. The State reiterated that Jair's statements were neither notarized nor authenticated in any way, and challenged whether he even signed the documents. The State further contended that even accepting Jair's statements as true, they failed to undermine the jury's verdict because they did not address the allegations of sexual abuse against petitioner.

¶ 19    In response, APD Ward-Brown stated that she filed a Rule 651(c) certificate without need to supplement the postconviction petition. She stated, "I did contact [petitioner and] spoke to him about his issues. I attempted to get an affidavit from his son. I attempted to contact his son through [petitioner]. I contacted other individuals that [petitioner] gave me to contact. And I didn't file a sup[plement], based on my investigation."

¶ 20    On September 11, 2020, the circuit court granted the State's motion to dismiss the postconviction petition. In its ruling, the court stated:

>      "After having reviewed all available petitions, court documents, and transcripts of the case, the Court has considered all of the allegations before it, as required that all claims made must be supported by affidavits, documents, or other records. Petitioner provides no such documentation to support any of the claims presented.
>
>      Petitioner's documents are not notarized or authenticated in any way. One document is not signed. Furthermore, the documents submitted do not address the allegation of sexual abuse of the victim by the defendant."

¶ 21    The circuit court also found that petitioner's claims of ineffective assistance of trial and appellate counsel were rebutted by the record. The court concluded that petitioner failed to make a substantial showing that his constitutional rights were violated. This appeal followed.

¶ 22                                    ANALYSIS

¶ 23    On appeal, petitioner argues that postconviction counsel provided unreasonable assistance by failing to make a concerted effort to contact Jair, "overlooking the sworn and notarized version of Jair's statement," and only providing a conclusory argument in response to contest the State's motion to dismiss.

¶ 24    Postconviction proceedings contain three stages. *People v. Tate*, 2012 IL 112214, ¶ 9. At the first stage, the circuit court independently reviews the petition, takes the allegations as true, and determines whether the petition is frivolous or patently without merit. *Id.* A petition may be summarily dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact. *Id.* If the court does not summarily dismiss the petition, it advances to the second stage, where counsel may be appointed to an indigent petitioner, and where the State may respond to the petition. *Id.* ¶ 10. At this stage, the court determines whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. *Id.* If no such showing is made, the petition is dismissed.  Otherwise, the petition is advanced to the third stage for an evidentiary hearing. *Id.*

¶ 25    Here, the petition was dismissed at the second stage of proceedings. During the second stage of proceedings, a petitioner bears the burden of making a substantial showing of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 35. This stage, however, only tests the legal sufficiency of the petition. Unless the allegations in the petition are positively rebutted by the record, they are taken as true, and the question to be resolved at the second stage is whether those allegations establish a constitutional violation. *Id.* "In other words, the 'substantial showing' of a constitutional violation that must be made at the second stage [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle petitioner to relief." (Emphasis in original and internal citation omitted.) *Id.* We review the circuit court's dismissal of a postconviction petition at the second stage *de novo*. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006).

¶ 26    Petitioner has not challenged the dismissal of his postconviction petition on the merits. Thus, he has forfeited any argument that his claims of constitutional deprivation were meritorious.

*People v. Cotto*, 2016 IL 119006, ¶ 49; Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing").

¶ 27    A defendant does not have a constitutional right to assistance of counsel in postconviction proceedings, and the right to appointed counsel at the second stage of postconviction review in Illinois is a statutory creation. *People v. Johnson*, 2018 IL 122227, ¶ 16. Accordingly, a claim that postconviction counsel's performance was inadequate is not reviewed under the ineffective assistance standard, but the lower reasonable assistance standard. *People v. Custer*, 2019 IL 123339, ¶ 30. Rule 651(c) outlines the steps an attorney must take to provide reasonable assistance, including the requirement to certify her efforts in detail on the record. *Id.* ¶ 32; Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Specifically, the rule requires that postconviction counsel certify that she consulted with the petitioner "to ascertain his or her contentions of deprivation of constitutional rights," examined the record of trial proceedings, and amended the petition as "necessary for an adequate presentation" of the petitioner's claims. Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 28    "The filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that postconviction counsel provided reasonable assistance." *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. "It is defendant's burden to overcome this presumption by demonstrating his attorney's failure to substantially comply with the duties mandated by Rule 651(c)." *Id.* We review whether postconviction counsel substantially complied with Rule 651(c) *de novo*. *People v. Bass*, 2018 IL App (1st) 152650, ¶ 13.

¶ 29    Here, petitioner argues that APD Ward-Brown represented him for four years and failed to conduct "a sufficient investigation to find Jair to overcome the State's procedural argument that the petition should be dismissed for lack of a notarized affidavit." Petitioner's argument heavily

relies upon his contention that postconviction counsel overlooked the "sworn and notarized version of Jair's 13-page statement." However, Jair's statement was never a sworn statement made under oath. Although neither the State nor petitioner discuss this discrepancy, a better understanding of the type of notarized statement Jair submitted defeats petitioner's claim in this case.

¶ 30    Section 6-102 of the Illinois Notary Public Act sets forth the two primary, and quite distinct, functions of notaries public. It provides:

"Notarial Acts. (a) In taking an acknowledgement, the notary public must determine, either from personal knowledge or from satisfactory evidence, that the person appearing before the notary and making the acknowledgement is the person whose true signature is on the instrument.

(b) In taking a verification upon oath or affirmation, the notary public must determine, either from personal knowledge or from satisfactory evidence, that the person appearing before the notary and making the verification is the person whose true signature is on the statement verified.

(c) In witnessing or attesting a signature, the notary public must determine, either from personal knowledge or from satisfactory evidence, that the signature is that of the person appearing before the notary and named therein.

(d) A notary public has satisfactory evidence that a person whose true signature is on a document if that person:

(1) is personally known to the notary;

(2) is identified upon the oath or affirmation of a credible witness personally known to the notary; or

(3) is identified on the basis of identification documents." 5 ILCS 312/6-

102 (West 2020).

¶ 31      In short, the Notary Public Act allows a notary public to require a verification of the *identity*

of the person signing a document, but that provision does not require the notary to administer an

oath, nor to verify the *truth* or *accuracy* of the contents within the document. This is a distinction

with a difference for the purposes of this disposition. Like the Illinois law, California Civil Code

§ 1189, which is cited at the top of the "certificate of acknowledgement" submitted by Jair, states

"[a]ny certificate of acknowledgment taken within this state shall include a notice at the top of the

certificate of acknowledgment in an enclosed box stating: 'A notary public or other officer

completing this certificate verifies *only the identity of the individual who signed the document to*

*which this certificate is attached, and not the truthfulness, accuracy, or validity of that document*.'

This notice shall be legible." (Emphasis added.) Ca. Civ. Code § 1189 (West 2015).

¶ 32      Here, the California notary public who signed the California all-purpose acknowledgment

form on January 29, 2019, stated under penalty of perjury regarding the identity of the person

whose name was subscribed to within the instrument, but nothing more. Put another way, the

California notarial function exercised in Jair's statement was merely the identification of Jair as

the signer; nothing in the preface, contents, or notarial jurat demonstrates that *Jair* made the

statement under oath.

¶ 33      Thus, the 13-page statement submitted by Jair and attached to petitioner's response to the

State's motion to dismiss is not sworn and does not attest to the truth or accuracy of the contents

within the statement. As a result, the circuit court properly concluded that petitioner failed to

provide the necessary documentation to support any of the claims presented in the postconviction

petition.

11

¶ 34    In this case, postconviction counsel provided two Rule 651(c) certificates. Thus, we presume based on counsel's compliance with the certificate requirement that she attempted to obtain the necessary affidavits in support of the postconviction claims. See *People v. Johnson*, 154 Ill. 2d 227, 241 (1993). Postconviction counsel's failure to supply necessary affidavits or other evidence will not rebut the presumption that arises from the Rule 651(c) certificate. Instead, a ruling on a motion to dismiss a postconviction petition which is not supported by affidavits or other documents may reasonably presume postconviction counsel made a concerted effort to obtain affidavits in support of the claims but was unable to do so. *Id.* The record supports this finding. The fact that petitioner provided an unsworn statement fails to support the conclusion that the substance of that statement, if sworn and taken under oath, would have affected the merits of the case, because the substance of Jair's statement does not contest the merits of the conviction and petitioner does not challenge the merits in this appeal.

¶ 35    In sum, nothing in the postconviction record before us shows that postconviction counsel failed to meet her obligations. She contacted petitioner and investigated his claims. She attempted to contact Jair and other witnesses to bolster petitioner's claims. She decided that supplementation of the postconviction petition was unnecessary. Postconviction counsel is under no obligation to amend a petition to pursue a meritless claim, as such an amendment is not "necessary" per the statute. See *People v. Collins*, 2021 IL App (1st) 170597, ¶ 38 (citing *People v. Greer*, 212 Ill. 2d 192, 205 (2004)). As our supreme court has explained, if an amendment to a *pro se* postconviction petition "would only further a frivolous or patently nonmeritorious claim, they are not 'necessary' within the meaning of the rule." *Greer*, 212 Ill. 2d at 205. Illinois courts have repeatedly held that "the purpose of Rule 651(c) is to ensure that counsel shapes the petitioner's claims into proper

legal form and presents those claims to the court." *People v. Perkins*, 229 Ill. 2d 34, 43-44 (2007) (citing *People v. Pinkonsly*, 207 Ill. 2d 555, 568 (2003)).

¶ 36     We must emphasize that not even petitioner himself argues that the dismissed claims in his *pro se* petition had merit, and his failure to argue any of them before this court supports the conclusion that postconviction counsel was not unreasonable for not amending the petition, despite her unsuccessful efforts to obtain additional evidentiary support. See *Profit*, 2012 IL App (1st) 101307, ¶ 23 ("we believe that the question of whether the *pro se* allegations had merit is crucial to determining whether counsel acted unreasonably by not filing an amended petition").

¶ 37     In *Bass*, postconviction counsel filed a Rule 651(c) certificate and found the petitioner's *pro se* postconviction petition adequately stated his contentions of constitutional deprivations and declined to amend the petition. *Id.* ¶ 7. The State moved to dismiss and counsel did not file a written response. Rather, counsel stood on the petition, but informed the court that he had attempted to obtain witness affidavits and was unsuccessful. *Id.* ¶ 8. The circuit court dismissed the petition. *Id.* ¶ 9.

¶ 38     On appeal, the petitioner did not argue the merits of his petition and forfeited any argument that his claims of constitutional deprivation were meritorious. *Id*. ¶ 10. Instead, he based his claim for relief solely on the contention that postconviction counsel rendered unreasonable assistance by failing to amend his petition to include witness affidavits, to explain the absence of those affidavits, or move to withdraw pursuant to *Greer*. The court stated that petitioner's argument "begs the question since he presumes (without any support in the record) that counsel's failure to amend his petition was the result of some deficiency in his lawyer's performance rather than the inability to substantiate [his] claims." *Id.* ¶ 14.

¶ 39    The record in *Bass* showed that postconviction counsel informed the court during multiple hearings that he attempted to locate the potential witnesses named in the *pro se* petition and that he met with petitioner and reviewed the record. Counsel ultimately stated that he interviewed three witnesses, including two named in the petition and " 'was not able to get any affidavits or attach any affidavits to the petition.' " *Id. ¶* 15.

¶ 40    The *Bass* court held that postconviction counsel fulfilled all the obligations imposed by Rule 651(c), concluding "not every petition can be amended to state a substantial constitutional claim." *Id. ¶* 16. The court further explained:

¶ 41    "[I]f the lawyer appointed to represent a postconviction petitioner determines, after fulfilling his or her obligations under Rule 651(c), that the petition cannot be amended, defendant has received the reasonable assistance of counsel the Act contemplates and his entitlement to the assistance of counsel is at an end. [Citation.] And whether appointed counsel elects to withdraw and inform the court of the reasons why the petition lacks merit or instead elects to stand on the *pro se* petition, the result is the same; defendant's unamended petition will be dismissed." *Id. ¶* 20.

¶ 42    We find *Bass* to be well reasoned and agree with its conclusion. As previously observed, the filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that postconviction counsel provided reasonable assistance and it is petitioner's burden to overcome this presumption. *Profit*, 2012 IL App (1st) 101307, ¶ 19. Postconviction counsel filed a Rule 651(c) certificate and stated that she attempted to contact a witness, but was unsuccessful. Petitioner has the burden to rebut this presumption through a showing that counsel's conduct was unreasonable despite the efforts detailed in the certificate. *People v. Landa*, 2020 IL App (1st) 170851, ¶ 46.

¶ 43    In this case, postconviction counsel chose to rest on the *pro se* petition, explaining that it adequately set forth petitioner's arguments. Accordingly, counsel's decision to rest on the *pro se* petition does not support petitioner's claim of unreasonable assistance and, furthermore, petitioner has failed to rebut the presumption that postconviction counsel rendered reasonable assistance in substantial compliance with Rule 651(c). Moreover, counsel's decision not to include an affidavit of little substantive value does not constitute a deprivation of adequate representation. *People v. Kirk*, 2012 IL App (1st) 101606, ¶¶ 2, 26. Petitioner failed to meet his burden to affirmatively show counsel's failure to include an affidavit from Jair was unreasonable.

¶ 44                                    CONCLUSION

¶ 45    We affirm the circuit court's second stage dismissal of petitioner's *pro se* postconviction petition.

¶ 46    Affirmed.