Docket No. 96806–Agenda 7–May 2004.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JEREMY GREER, Appellant.

Opinion filed September 23, 2004.

JUSTICE RARICK delivered the opinion of the court:

In 1993, defendant pled guilty to one count of first degree murder and received a 60-year prison sentence. The appellate court affirmed defendant’s conviction and sentence on direct appeal. 
People v. Greer
, 281 Ill. App. 3d 1149 (1996) (unpublished order under Supreme Court Rule 23). On December 12, 2000, defendant filed a 
pro se 
postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122–1 through 122–8 (West 2000)); however, the petition did not come to the attention of the circuit court until July 10, 2001, more than 90 days later. Since no action was taken on the petition within 90 days of filing, the circuit court docketed the petition for further consideration and appointed counsel for defendant, as the Act requires. See 725 ILCS 5/122–2.1, 122–4 (West 2000). Appointed counsel subsequently filed a motion to withdraw as counsel, alleging there was “no basis on which to present any meritorious issue for review.” Counsel supported his motion with a brief purporting to comply with the procedures established in 
Anders v. California
, 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396 (1967). In his brief, counsel outlined his investigative efforts on defendant’s behalf and stated, as to each issue raised in defendant’s 
pro se 
petition, that counsel could not “properly substantiate” the claim. Counsel concluded that defendant’s claims were not meritorious and no issues of merit could be raised on his behalf. The circuit court granted counsel’s motion to withdraw and dismissed defendant’s 
pro se 
petition 
sua sponte
.

The appellate court affirmed in part, reversed in part, and remanded for further proceedings. 341 Ill. App. 3d 906. The appellate court held that “counsel appointed pursuant to the Act may move for leave to withdraw if he or she complies with Supreme Court Rule 651(c) and can demonstrate that no meritorious issues can be presented for review.” 341 Ill. App. 3d at 910. However, the appellate court determined that the circuit court had erred in dismissing defendant’s petition 
sua sponte
 “because its power to do so had expired and there was no motion to dismiss on file for the trial court to grant.” 341 Ill. App. 3d at 910.

We granted the defendant’s petition for leave to appeal. 177 Ill. 2d R. 315(a). On appeal, defendant contends that the circuit court’s second-stage order, granting appointed counsel’s motion to withdraw based on lack of merit, was unauthorized by the Act and deprived defendant of his statutory right to counsel. As defense counsel observed in oral argument before this court, no other aspect of the appellate court’s judgment is in issue. In order to provide a proper context for discussion of defendant’s claim, we will provide a more detailed recitation of facts.

Defendant pled guilty to one count of first degree murder on September 13, 1993. Two other counts, charging first degree murder under alternative theories, were dismissed at the time of the guilty plea.

Prior to the plea, the circuit court advised defendant of the possible penalties he faced given the hypothetical applicability of an array of “statutory factors” and the possible existence of “certain circumstances.” In the course of the court’s explanation of potential penalties, which included the death penalty, the prosecutor advised the court that the State would 
not
 be seeking a sentence of death. The prosecutor did not explain whether that decision was related to defendant’s guilty plea. In any event, the court advised defendant of his rights and confirmed that the guilty plea was an “open plea.”

A factual basis was presented to support the guilty plea. The State’s evidence indicated that defendant intended to kill Lori Caruthers and he carried out the murder in a premeditated manner pursuant to a preconceived plan, acting in concert with two other men, Anthony Walker and Richard Pallente. According to the factual basis presented by the State, defendant not only continued his association with Anthony Walker after Walker expressed a desire to kill Caruthers and her friend, Mischell Knepler, defendant affirmatively indicated he was prepared to assist in that endeavor, saying, “Find them.” Walker’s sister, Tanya, would have testified that defendant later instructed her not to let Caruthers use the telephone at the Walker residence and in fact stopped Carruthers when she attempted to leave the Walker residence through the back door of the house.

Richard Pallante would have testified that defendant obtained a pistol at defendant’s residence on the day of the murder and stated that they had to kill Caruthers because she knew too much. According to Pallante, defendant and Walker laughed when Walker said, in effect, that defendant was cruel. Pallante would have testified that defendant and Walker persuaded him to give them a ride, and he arrived at the Walker residence around 7 p.m. on the evening of the murder. Defendant and Walker entered the car with Caruthers. Pallante headed west on Old Jacksonville Road in the direction of Knepler’s house. At some point the three men stopped and exited the car, at which time Walker told Pallante that defendant was going to kill Caruthers because she knew too much. Defendant got Caruthers out of the car. After a short period of time, defendant returned and Walker asked defendant what was happening. When defendant responded that they were “just talking,” Walker urged him to “hurry up.” Thereafter, the same sequence of events transpired a second time. After defendant departed from the car for a third time, and was gone for a while, Walker instructed Pallante to drive in the direction defendant and Caruthers had gone. Pallante located defendant and Caruthers and parked on the opposite side of the road from them. Defendant returned to the car and there was a repetition of the previous exchanges between defendant and Walker, at which time Walker started to get out of the car, saying, “I’ll do it myself.” Defendant responded, “No, I’ll do it.” He then got out of the car and walked over to where Caruthers was standing. Shortly thereafter, there was a single gunshot and Caruthers fell to the ground. Defendant pulled Caruthers’ body further into the ditch, got back into the car, and the three men left the scene, traveling toward Springfield. Defendant said he had told Caruthers that her friend, Mischell, was dead, and Caruthers begged him not to shoot her before he killed her.

After the factual basis was presented, defendant entered a plea of guilty. At that time, the court stated:

“This is an open plea. The State has indicated that they will not be presenting aggravating evidence to seek the death penalty. I consider that as a part of a very limited plea agreement. Other than for that, has any force, threats, or have any threats or promises been made to you to cause you to enter this plea of guilty this morning?”

Defendant responded, “No.” The court thereupon noted for the record that defendant had been advised of the “possible penalties that might be imposed, including an extended term or natural life imprisonment.” The court found the plea to be voluntary, “an open plea with the one exception *** previously *** stated,” and further found a factual basis for the plea. The court accepted defendant’s plea of guilty and entered judgment thereon.

A sentencing hearing was conducted on November 30, 1993, during which evidence in aggravation and mitigation was presented. Thereafter, the State argued for a sentence of natural life imprisonment or, in the alternative, an extended-term sentence, suggesting that the murder was committed in a cold, calculated and premeditated manner pursuant to a preconceived plan (see 720 ILCS 5/9–1(b)(11) (West 1992)) and that the offense was accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty. Defense counsel argued that nothing in the defendant’s background or the circumstances of the offense warranted a sentence more than the mandatory minimum sentence of 20 years’ imprisonment. Defendant made a statement in allocution.

The circuit court sentenced defendant to the maximum non-extended-term sentence of 60 years’ imprisonment. Given the court’s ambiguous statements leading up to imposition of sentence, it is impossible to tell whether the court found no statutory factors to support a sentence of natural life imprisonment or an extended term, or the court simply deemed such sentences inappropriate. In pronouncing sentence, the sentencing judge stated that he had considered all “applicable statutory mitigating and aggravating factors.”

Defendant subsequently filed a motion for reduction of sentence. Defendant’s motion was heard and denied on September 26, 1995. As previously noted, defendant appealed and the appellate court affirmed defendant’s conviction and sentence. 
Greer
, 281 Ill. App. 3d 1149 (unpublished order under Supreme Court Rule 23).

On December 12, 2000, the defendant filed a 
pro se 
postconviction petition, alleging that (1) appellate counsel on direct appeal had rendered ineffective assistance in that counsel had failed to “argue petitioner’s guilty plea was not entered into knowingly and voluntarily because trial counsel incorrectly advised the petitioner that he was eligible for the death penalty,” and (2) petitioner’s guilty plea “was not entered into knowingly and voluntarily because it was based upon trial counsel’s representation of a bogus plea bargain.” With respect to the first allegation, defendant claimed that his trial attorney’s advice regarding the availability of the death penalty was erroneous and, had he known that he was not eligible for the death penalty, “he would not have given up all his rights to avoid an extended term or natural life sentence, although he was not legally eligible for either one of those sentence[s] as well.” As for the second allegation, defendant claimed he pled guilty upon defense counsel’s representation that an agreement had been reached for a 45-year prison sentence, though he admits the record shows “no such deal had ever been agreed upon.” Defendant’s petition does not address his own acknowledgment in open court that no promises had been made to induce him to enter the guilty plea.

Because no one brought the petition to the attention of the circuit court within 90 days of filing, the court docketed the petition for second-stage consideration and appointed counsel for defendant, as the Act requires. 725 ILCS 5/122–2.1, 122–4 (West 2000). Obviously, there was never an initial determination as to merits of the petition.

On October 11, 2001, defendant’s appointed attorney filed a motion to withdraw as counsel. Counsel stated that he had reviewed the record, transcripts of proceedings, the State’s Attorney’s files, and had interviewed “all relevant parties,” including defendant; however, he could find “no basis on which to present any meritorious issue for review.” Counsel supported his motion with a brief purporting to comply with 
Anders 
procedures. In that brief, counsel meticulously detailed his activities after appointment and, with respect to each of defendant’s contentions, stated that he could not “properly substantiate” defendant’s claim, concluding that petitioner’s claim was “not meritorious.” Counsel suggested that he had considered other possible issues, but could find no issue of merit.

Counsel’s motion to withdraw was heard on December 18, 2001. The judge presiding noted that he had not been the original trial judge in the case and that the clerk had failed to bring defendant’s petition to his attention in a timely manner, necessitating appointment of counsel. The court confirmed that defendant had discussed counsel’s motion to withdraw with counsel and advised defendant that he could appeal if the court allowed counsel’s motion, but he would have to do so 
pro se
. The court then granted the motion and dismissed defendant’s pending petition, stating:

“The Court having reviewed the materials submitted by [counsel] finds that there is no constitutional claim of merit and that it is appropriate that the postconviction petition therefore be dismissed.”

The court thereupon directed the clerk to file notice of appeal on behalf of defendant.

The appellate court held that defendant had not been denied his statutory right to counsel when the trial court granted appointed counsel’s motion for leave to withdraw. In so holding, the appellate court noted and followed Fourth District precedent in 
People v. Norton
, 203 Ill. App. 3d 571, 573-74 (1990):

“This court has held that a defendant receives sufficient representation of counsel in a postconviction proceeding under the Act when counsel complies with Supreme Court Rule 651(c) (134 Ill. 2d R. 651(c)), even if appointed counsel moves to withdraw upon finding no meritorious issues to present. 
Norton
, 203 Ill. App. 3d at 573, 561 N.E.2d at 350. Defendant does not allege that appointed counsel did not comply with the requirements of Rule 651(c) or that appointed counsel was incorrect in his assessment that there were no meritorious issues to present. Therefore, under this court’s precedent, defendant received adequate representation on his postconviction petition.” 341 Ill. App. 3d at 908-09.

The appellate court concluded that the circuit court, under the circumstances, had acted properly when it allowed postconviction counsel to withdraw. 341 Ill. App. 3d at 909-10. In so holding, the appellate court declined to follow the Third District’s decision in 
People v. McKenzie
, 323 Ill. App. 3d 592 (2001), upon which defendant relied.

The appellate panel in 
McKenzie
 had specifically overruled three Third District cases (
People v. Robinson
, 160 Ill. App. 3d 366 (1987); 
People v. Rial
, 214 Ill. App. 3d 420 (1991); 
People v. Cokley
, 219 Ill. App. 3d 209 (1991)) that had reached a result consistent with 
Norton
. The crux of the 
McKenzie 
court’s reasoning was that the legislature has mandated appointment of counsel for indigents desiring representation at the second stage of postconviction proceedings, but has not specifically provided for withdrawal of counsel:

“It appears from our review of the Act that the legislature intended to create procedures to give a convicted defendant a last-ditch opportunity to change the outcome of his criminal case. It also appears, from the legislators’ decision not to provide for withdrawal, that they intended for the defendant to have the assistance of trained counsel throughout the process. We, therefore, conclude from the absence of authorizing language that withdrawal of appointed counsel is in contravention of the statute ***.” 
McKenzie
, 323 Ill. App. 3d at 595-96.

As additional support for its decision, the 
McKenzie 
court seized upon certain comments this court made in 
People v. Porter
, 122 Ill. 2d 64 (1988), in the course of addressing separation-of-powers and due process arguments. Those comments, taken out of context, are cited in 
McKenzie 
as the following propositions: (1) Rule 651(c) is concerned with appointment of counsel at the appellate level, while section 122–2.1 of the Act provides for appointment of counsel at the trial stage of postconviction proceedings; (2) the appointment of counsel at the hearing stage of postconviction proceedings is a matter for the legislature; and (3) a postconviction petitioner is entitled to have counsel represent him on a petition once he sets out allegations demonstrating a meritorious constitutional claim. 
McKenzie
, 323 Ill. App. 3d at 596. Defendant’s position before this court relies heavily on 
McKenzie 
and makes essentially the same arguments.

We note, at the outset, that the defendant in this case arrived at the second stage of postconviction proceedings without there ever having been a determination that his 
pro se 
petition presented the gist of a meritorious claim. In that respect, this case differs from 
McKenzie
, where such a finding 
was
 made prior to advancement to the second stage of postconviction proceedings and the appointment of counsel. Notwithstanding that difference, we recognize that sections 122–2.1 and 122–4 of the Act require appointment of counsel for an indigent defendant desiring representation when his or her 
pro se 
postconviction petition is not summarily dismissed by the circuit court within 90 days of filing, irrespective of whether the circuit court has actually considered the merits of the petition. We begin our analysis with a discussion of the purpose of the Act and the procedural mechanism for its implementation.

Illinois’ Post-Conviction Hearing Act provides a procedural mechanism through which a criminal defendant can assert “ ‘that in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both.’ ” 
People v. Rogers
, 197 Ill. 2d 216, 220-21 (2001), quoting 725 ILCS 5/122–1 (West 2000). In a postconviction proceeding, the circuit court does not redetermine a defendant’s guilt or innocence, but instead examines constitutional issues which escaped earlier review.
 Rogers
, 197 Ill. 2d at 221. A postconviction proceeding is a collateral attack upon the prior conviction (
Rogers
, 197 Ill. 2d at 221) and affords only limited review of constitutional claims not presented at trial (
People v. Coleman
, 206 Ill. 2d 261 (2002)). We stress that postconviction procedures entail 
review 
of the prior proceeding that resulted in a defendant’s conviction, whether or not evidence is introduced concerning matters outside the record.

Under the provisions of the Act, an indigent defendant who has not been sentenced to death is not automatically entitled to appointment of counsel. The source of the right to counsel in a postconviction matter is statutory rather than constitutional (
People v. McNeal
, 194 Ill. 2d 135, 142 (2000)), and the Act does not provide for appointment of counsel unless an indigent defendant’s petition survives the first stage of postconviction proceedings. 725 ILCS 5/122–2.1, 122–4 (West 2000). If the circuit court reviews a 
pro se 
petition and determines that it is frivolous or patently without merit, the court may summarily dismiss the petition without appointment of counsel. It is only after a defendant’s petition has been found to set forth the gist of a meritorious claim, 
or 
the court fails to take any action on the petition within 90 days of filing, that the process advances to second-stage proceedings and counsel is appointed. 725 ILCS 5/122–2.1, 122–4 (West 2000). Of course, in the latter instance, the petition may well be frivolous or patently without merit, and the defendant is appointed counsel only through the fortuity of the circuit court’s inaction.

Once counsel 
is 
appointed for an indigent defendant, he or she is entitled only to the level of assistance guaranteed by the Act. 
McNeal
, 194 Ill. 2d at 142. This court has determined that to be only a “reasonable” level of assistance. 
McNeal
, 194 Ill. 2d at 142; 
People v. Turner
, 187 Ill. 2d 406, 410 (1999). As this court stated in 
People v. Owens
, 139 Ill. 2d 351, 364-65 (1990):

“Because the right to counsel in post-conviction proceedings is derived from a statute rather than the Constitution, post-conviction petitioners are guaranteed only the level of assistance which that statute provides. Section 122–4 of the Code of Criminal Procedure and Supreme Court Rule 651 provide post-conviction petitioners with a 
reasonable 
level of assistance in post-conviction proceedings, but do not guarantee that they will receive the same level of assistance that the Constitution guarantees to defendants at trial. This distinction is rational, because trial counsel plays a different role than counsel in post-conviction proceedings. [Citation.] At trial, counsel acts as a shield to protect defendants from being ‘haled into court’ by the State and stripped of their presumption of innocence. (
Ross v. Moffitt 
(1974), 417 U.S. 600, 610-11, 41 L. Ed. 2d 341, 351, 94 S. Ct. 2437, 2444.) Post-conviction petitioners, however, have already been stripped of the presumption of innocence, and have generally failed to obtain relief on appellate review of their convictions.” (Emphasis in original.)

This court has repeatedly held that counsel must perform specific duties in his or her postconviction representation in the circuit court, as set forth in Supreme Court Rule 651(c). 
McNeal
, 194 Ill. 2d at 142; 
Turner
, 187 Ill. 2d at 410. Rule 651(c) requires that the record in postconviction proceedings demonstrate that appointed counsel “has consulted with petitioner either by mail or in person to ascertain his contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed 
pro se 
that are necessary for an adequate presentation of petitioner’s contentions.” 134 Ill. 2d R. 651(c).

Fulfillment of the third obligation under Rule 651(c) does not require postconviction counsel to advance frivolous or spurious claims on defendant’s behalf. If amendments to a 
pro se 
postconviction petition would only further a frivolous or patently nonmeritorious claim, they are not “necessary” within the meaning of the rule. Moreover, the mere filing of an amended petition by counsel under such circumstances would appear to violate the proscriptions of Supreme Court Rule 137 (155 Ill. 2d R. 137). At least one appellate panel has held Rule 137 applicable to proceedings under the Post-Conviction Hearing Act. See 
People v. Bowman
, 335 Ill. App. 3d 1142, 1154-55 (2002). Rule 137 provides in pertinent part:

“The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.” 155 Ill. 2d R. 137.

An attorney, such as the one in this case, who determines that defendant’s claims are meritless cannot in good faith file an amended petition on behalf of defendant.

Defendant argues that preparation of an amended petition under the pertinent circumstances need not violate Rule 137 if appointed counsel does not 
sign 
the amended petition he or she prepares on behalf of the defendant. Ignoring for the moment the attorney’s role in preparing a document for filing which he or she knows will consume the time and energies of the court and opposing counsel by advancing frivolous arguments, we note defendant’s alternative argument, that Rule 137 poses no problem because “[c]ounsel could simply aver, according to Rule 651(c), that the petition does not need to be amended and present the petitioner’s contentions according to the dictates of Rule 651(c).”

It seems to us that these arguments purposefully avoid the pertinent ethical considerations in this case and beg the questions asked, but not adequately answered, in oral argument before this court: What is defense counsel to do after he or she determines that defendant’s petition is frivolous? Is counsel to stand mute at all subsequent proceedings? How can counsel, ethically, “present the petitioner’s contentions” when counsel 
knows 
those contentions are frivolous? Obviously, the answer is counsel cannot.

We find the words of the United States Supreme Court in 
McCoy v. Court of Appeals
, 486 U.S. 429, 100 L. Ed. 2d 440, 108 S. Ct. 1895 (1988), instructive as to the responsibilities of appointed counsel, and we quote the Court at length:

 “At the trial level, defense counsel’s view of the merits of his or her client’s case never gives rise to a duty to withdraw. That a defense lawyer may be convinced before trial that any defense is wholly frivolous does not qualify his or her duty to the client or to the court. Ethical considerations and rules of court prevent counsel from making dilatory motions, adducing inadmissible or perjured evidence, or advancing frivolous or improper arguments, but those constraints do not qualify the lawyer’s obligation to maintain that the stigma of guilt may not attach to the client until the presumption of innocence has been overcome by proof beyond a reasonable doubt.

After a judgment of conviction has been entered, however, the defendant is no longer protected by the presumption of innocence. *** Although trial counsel may remain silent and force the prosecutor to prove every element of the offense, counsel for an appellant cannot serve the client’s interest without asserting specific grounds for reversal. In so doing, however, the lawyer may not ignore his or her professional obligations. Neither paid nor appointed counsel may deliberately mislead the court with respect to either the facts or the law, or consume the time and the energies of the court or the opposing party by advancing frivolous arguments.” 
McCoy
, 486 U.S. at 435-36, 100 L. Ed. 2d at 451-52, 108 S. Ct. at 1900-01.

An attorney who is appointed to represent a defendant after the 90-day default provision of the Act is applied may well find that he or she represents a client attempting to advance arguments that are patently without merit or wholly frivolous, a client whose petition would have been summarily dismissed had the circuit court timely considered the merits of the petition. Defendant suggests that there are no ethical constraints which would preclude postconviction counsel from assisting such a client in needlessly consuming the time and energies of the court and the State by advancing frivolous arguments. 
McCoy 
holds to the contrary.

Defendant contends that appointed postconviction counsel cannot move to withdraw because the Act does not specifically authorize withdrawal. Defendant submits that this court must 
presume
, from the Act’s silence on this point, that the legislature intended to prohibit withdrawal of counsel.

Legislative “silence is not an unmistakable implication.” 
Armstrong v. Resolution Trust Corp.
, 157 Ill. 2d 49, 60 (1993). For example, in 
In re St. Louis
, 67 Ill. 2d 43 (1977), the State argued that it was the intent of the legislature to allow law enforcement officials to retain juvenile records indefinitely regardless of whether charges were eventually brought. This court disagreed, stating, “The fact that the Juvenile Court Act is silent as to the expungement of juvenile records does not necessarily imply that such records could be made and retained where their retention would serve no discernible purpose.” 
St. Louis
, 67 Ill. 2d at 47. Legislative silence is not dispositive.

In construing a statute, a court is to ascertain and give effect to the intent of the legislature. 
In re C.W.
, 199 Ill. 2d 198, 211 (2002). In order for us to accept the defendant’s position, that the legislature intended to prohibit withdrawal of appointed postconviction counsel irrespective of the merits of defendant’s petition, we would have to reconcile that purported intent with three clear manifestations of intent to the contrary.

First, section 122–4 of the Post-Conviction Hearing Act, regarding pauper petitions, provides, “A petitioner who is a prisoner *** who files a pleading *** that purports to be a legal document seeking post-conviction relief *** against the State *** in which the court makes a specific finding that the pleading *** is frivolous shall not proceed as a poor person and shall be liable for the full payment of filing fees and actual court costs ***.” 725 ILCS 5/122–4 (West 2000). By this provision, the legislature seeks to 
penalize
 a defendant for filing a frivolous petition; yet, defendant, in this instance, would have us presume
 
that the legislature intended that a defendant filing a frivolous petition should have the 
benefit
 of appointed counsel throughout postconviction proceedings. The foregoing portions of section 122–4 exhibit an intention inconsistent with that which defendant attributes to the legislature.

Second, the legislature has seen fit to confer upon the circuit court the power, without the necessity of appointing counsel, to dismiss, outright, petitions at first stage when they are deemed frivolous or patently without merit. The fact that the legislature has required appointment of counsel for indigent defendants when the circuit court has not considered a postconviction petition in a timely manner does 
not, 
in our opinion, indicate that the legislature intended that such a defendant have continuing representation throughout the remainder of postconviction proceedings, where counsel later determines that the petition is frivolous or clearly without merit. The purpose behind appointment of counsel in the latter instance might be, and probably is, nothing more than a desire to jumpstart a process that has shown no signs of progress. There appears to be no other rationale for treating similarly situated defendants differently. Each defendant has filed a frivolous petition. The legislature surely did not intend to accord the latter defendant continuing representation after counsel determines the petition to be frivolous when the former defendant is never given counsel in the first place.

Finally, it is inconceivable that the legislature intended to grant defendants in postconviction proceedings–who are entitled only to a “reasonable” level of assistance–a statutory right to counsel of greater duration than that received by defendants on direct appeal—where the level of assistance required is of a higher magnitude and of constitutional dimension (see generally 
Owens
, 139 Ill. 2d at 364-65), but counsel are nonetheless allowed to withdraw in accordance with 
Anders 
procedures. Defendant’s position simply makes no sense.

We are confident that the legislature did not intend to require appointed counsel to continue representation of a postconviction defendant after counsel determines that defendant’s petition is frivolous and patently without merit. Nothing in the Act requires the attorney to do so, and the attorney is clearly 
prohibited 
from doing so by his or her ethical obligations.

Counsel, in this case, determined that defendant’s claims were meritless. We agree with that assessment. Defendant does not argue to the contrary. The record clearly refutes defendant’s claims.

Defendant first claimed that his guilty plea was not entered into knowingly and voluntarily because trial counsel incorrectly advised him that he was eligible for the death penalty. Defendant contended that his trial attorney’s advice regarding the availability of the death penalty was erroneous and, had he known that he was not eligible for the death penalty, “he would not have given up all his rights to avoid an extended term or natural life sentence, although [he claimed] he was not legally eligible for either one of those sentence[s].”

We believe defendant 
was 
eligible for the death penalty. Therefore, counsel’s advice to that effect was not erroneous. A defendant may be found eligible for the death penalty where “the murder was committed in a cold, calculated and premeditated manner pursuant to a preconceived plan, scheme or design to take a human life by unlawful means, and the conduct of the defendant created a reasonable expectation that the death of a human being would result therefrom.” 720 ILCS 5/9–1(b)(11) (West 2000). In our opinion, defendant’s conduct qualified him for the death penalty. Moreover, the record certainly suggests–from the timing of the prosecutor’s announcement that he would not seek the death penalty–that the death penalty was taken off the table in the course of plea negotiations. Though the parties and the court at various times referred to the guilty plea as an “open plea,” the circuit court obviously believed the State’s decision not to pursue the death penalty was part of the plea, as the court’s comments indicate:

“The State has indicated that they will not be presenting aggravating evidence to seek the death penalty. I consider that as a part of a very limited plea agreement.”

Later, the court again stated that the guilty plea was “an open plea with the one exception *** previously *** stated.” In sum, the record reveals that defense counsel’s advice to defendant was not erroneous and, in fact, the record suggests that the State’s decision not to pursue the death penalty was part of a plea agreement.

The record also refutes defendant’s second postconviction claim. As previously noted, defendant claimed that his guilty plea “was not entered into knowingly and voluntarily because it was based upon trial counsel’s representation of a bogus plea bargain.” Specifically, defendant claimed he had pled guilty upon defense counsel’s representation that an agreement had been reached for a 45-year prison sentence.

In 
People v. Jones
, 144 Ill. 2d 242, 263 (1991), this court held that a defendant’s acknowledgment in open court, at a plea proceeding, that there were no agreements or promises regarding his sentence, served to contradict his postconviction assertion that he pled guilty in reliance upon an alleged, undisclosed promise by defense counsel regarding sentencing. See also 
People v. Rissley
, 206 Ill. 2d 403, 454 (2003) (defendant’s allegations were “totally contradicted by the record of the plea”); 
People v. Maury
, 287 Ill. App. 3d 77 (1997) (record indicated that defendant answered “no” when the circuit court inquired whether any extraneous promises had been made to him). When the defendant in this case was asked, in open court, whether any promises had been made to him to cause him to enter his plea of guilty, he responded, “No.” His own words refute his postconviction allegations.

The record itself demonstrates that defendant’s postconviction allegations were patently without merit and frivolous. Under the circumstances, the Act presents no impediment to withdrawal of counsel. Although we hasten to emphasize that the inability of postconviction counsel to “properly substantiate” a defendant’s claims is 
not 
the standard by which counsel should judge the viability of a defendant’s postconviction claims, and that an attorney moving to withdraw should make some effort to explain 
why 
defendant’s claims are frivolous or patently without merit, it nonetheless appears that counsel fulfilled his duties as prescribed by Rule 651(c), and the record before us supports counsel’s assessment that the defendant’s postconviction claims were frivolous and without merit. Consequently, though the procedure in the circuit court leaves something to be desired, defense counsel should be allowed to withdraw, and we affirm the judgment of the appellate court in that respect.

We express no opinion on issues not raised by defendant in this appeal. The judgment of the appellate court, remanding the cause to the circuit court, is affirmed.

Affirmed.