2023 IL App (1st) 211608-U

No. 1-21-1608

Order filed June 30, 2023

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 09 CR 22250 |
| | ) | |
| SAMMY GORDON, | ) | Honorable |
| | ) | Michael J. Kane, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Presiding Justice Mikva and Justice Tailor concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant has not rebutted the presumption that postconviction counsel provided reasonable assistance where he has not shown that counsel could have successfully amended his *pro se* petition.

¶ 2    Defendant Sammy Gordon appeals from the circuit court's second-stage dismissal of his petition for relief filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). He argues that appointed postconviction counsel failed to provide reasonable assistance under Supreme Court Rule 651(c) (eff. July 1, 2017) by not amending his *pro se* petition.

Specifically, he claims that postconviction counsel should have amended his *pro se* claim that trial counsel was ineffective for failing to impeach a police officer's testimony about the location of his arrest into a claim that trial counsel was ineffective for not timely disclosing to the State that defendant intended to raise an alibi defense. For the following reasons, we affirm.

¶ 3     Following a 2013 jury trial, defendant was convicted of armed robbery and sentenced to 37 years' imprisonment, which included a 15-year firearm enhancement.

¶ 4     Before trial, trial counsel moved to suppress statements by defendant. In support, defendant submitted an affidavit averring that he was arrested by a male police officer on November 13, 2009, while walking east on 87th Street. The police ignored his requests for an attorney, beat him, stated they had evidence that would "put [him] at the scene of the crime," and coerced him into signing papers by threatening he would spend his life in prison. The affidavit was unsworn, but during a hearing on the motion to suppress, defendant swore that the facts alleged in the affidavit were true and accurate. During the hearing, Chicago police officer Ranita Mitchell testified that she saw three men, including defendant, jump a fence after a robbery at a Family Dollar store. She pursued them and apprehended defendant in an alley. The State presented additional witnesses who denied defendant's allegations about the inducement of his statements. The court denied the motion.

¶ 5     Before jury selection, defense counsel indicated that defendant would be the defense's only witness, if he chose to testify. During opening statements at trial, defense counsel told the jury that defendant would testify regarding "where he was that night and what he was doing that night, and he will also tell you why he gave that confession." The State requested a sidebar and objected that the opening statement signaled defendant would present an undisclosed alibi defense. Counsel

responded that defendant would testify that he was on 87th, approximately two blocks from the scene of the robbery, when a "policeman" approached and arrested him. Counsel asserted that he previously explained to the State that was what defendant would testify, and it was consistent with defendant's affidavit. The State argued that defendant's assertion in the affidavit that he had been arrested on 87th was different than asserting he was not at the scene of the robbery. The court stated that any testimony that defendant was coming from somewhere besides the scene of the robbery when he was arrested would be an undisclosed alibi defense, which was "improper" and "sanctionable." The court directed the parties to provide case law on the issue. Counsel stated that defendant first alerted him to his proposed testimony several days previously.

¶ 6    The cause then proceeded directly to the State's case-in-chief. As we detailed the trial evidence in our opinion from defendant's direct appeal (*People v. Gordon*, 2016 IL App (1st) 134004), we repeat the facts here only as necessary to resolve the issue in this appeal.

¶ 7    The State's evidence included two witnesses, Jerome Frazier and Tiyanna Mays, who identified defendant in court as one of three men who committed a robbery at a Family Dollar store on the evening of November 13, 2009. Frazier, a former police officer who lived across the street from the store, testified that he saw defendant approach the store with a surgical mask around his neck, and later saw defendant inside the store with a firearm. Frazier further testified that he had parked his GMC Yukon behind the store in an attempt to block the store's back door, but the robbers exited the back door, hopped over his vehicle, and climbed over a fence. An expert in latent fingerprints testified that a palm print taken from a Yukon matched defendant's. Mays, an employee of the store, testified that defendant entered the store wearing a surgical mask and

holding a firearm, and identified defendant on the store's surveillance footage.[1] Mays and Frazier identified defendant in a showup in the store parking lot as one of the robbers, as did Mattie Graves, a customer who was in the store and testified that she identified defendant in the showup as the man who wore a surgical mask. Several other employees and customers who were in the store testified to the events of the robbery but did not identify defendant as one of the robbers.

¶ 8    Mitchell testified that she and her partner responded to the robbery. In the alley behind the store, she saw three men, including defendant, jump a fence. Defendant held a firearm and had a surgical mask around or hanging from his face. She pursued on foot, was right behind him as he turned between two garages, and apprehended defendant in the backyard of an address on the 8600 block of South Calumet Avenue. She had never lost sight of him. He still held the firearm and the mask hung from his face. She ordered him to drop his weapon and get on the ground, and he complied. Mitchell and her partner returned defendant to the Family Dollar for the showup.

¶ 9    A police sergeant testified that, after the showup, he spoke with defendant, who admitted he had run out the back of the store, jumped over a vehicle and a fence, and was caught in an alley with a firearm. An assistant state's attorney (ASA) testified that, the next day, defendant gave a written statement admitting to the robbery. The statement included that defendant exited the back of the store and jumped a gate. Defendant ran "about two houses down," then encountered a female police officer, dropped his firearm, and fell. In a still image from the store's surveillance footage,

---

[1] The video was included in the record for defendant's direct appeal (*Gordon*, 2016 IL App (1st) 134004, ¶ 8 n.2) but is not included in the record for the instant appeal.

defendant identified himself as wearing a surgical mask and holding a firearm. The State published a photograph of defendant holding the written statement.[2]

¶ 10   During a lunch break, the court and the parties continued discussing the alibi issue. Defense counsel did not believe defendant's testimony would constitute an alibi, but counsel did not know the exact content and stated that defendant "seem[ed] to be changing his mind." The court warned that defendant may not be allowed to testify. The State noted it had submitted case law indicating a defendant could not raise an alibi at trial without having notified the State. Defense counsel argued that defendant's affidavit indicated where he was arrested. The court instructed counsel to proffer defendant's expected testimony in writing, then explained to defendant that the State sought to bar him from testifying because his alleged alibi had not been disclosed. Defendant noted he had written an affidavit and asked how he could defend himself without testifying. The court said he could discuss that with counsel, and defendant confirmed he understood the court could bar him from testifying.

¶ 11   Following the lunch break, defense counsel noted he had submitted the proffer the court had requested, in the form of an amended answer to the State's motion for discovery. The document is included in the record on appeal and provides that defendant might present an alibi defense by testifying that he did not participate in the robbery and was arrested while walking east on 87th, from a restaurant to someone's house. However, counsel then stated that defendant would not testify and that counsel had filed the proffer in case defendant changed his mind. The court confirmed that defendant understood it was his choice whether to testify, and that defendant had

---

[2] The photograph is not included in the record for the instant appeal, but we noted on direct appeal that a photograph taken at the police station showed defendant wearing the same clothing as depicted in the surveillance video. *Gordon*, 2016 IL App (1st) 134004, ¶ 47.

reviewed the "affidavit" with counsel and was aware of the facts therein. Defendant confirmed he had to speak to counsel about whether to testify, and that he did not plan to testify.

¶ 12    After the State rested and the court denied the defense's motion for a directed finding, the court asked defendant what he wished to do. Defendant stated he did not wish to testify. The defense rested without presenting evidence. Following closing arguments, the jury found defendant guilty of armed robbery.

¶ 13    At the sentencing hearing, defense counsel noted that defendant's co-offenders had pled guilty and been sentenced to 21 and 25 years' imprisonment, respectively. Counsel asked the court not to punish defendant for electing trial and to impose the minimum sentence. The court sentenced defendant to a total of 37 years' imprisonment, comprising 22 years for armed robbery plus a mandatory 15-year enhancement for being armed with a firearm.

¶ 14    On direct appeal, defendant argued that trial counsel provided ineffective assistance by promising the jury that defendant would testify but failing to call him as a witness. *Gordon*, 2016 IL App (1st) 134004, ¶¶ 1, 38. He also argued that his sentence was excessive given his difficult upbringing, education, and lack of criminal history, and noted the lighter sentences of his co-offenders. *Id.* ¶¶ 49, 58.

¶ 15    In affirming defendant's conviction, we concluded that defendant did not show counsel acted deficiently as defendant decided not to testify. *Id.* ¶¶ 41-43. Defendant asserted that he decided not to testify because counsel failed to disclose his alibi defense to the State. *Id.* ¶ 44. However, the record was unclear as to (1) when counsel actually knew of defendant's intent to testify that he was arrested on 87th Street, and (2) whether the court would have barred defendant from testifying given that counsel submitted the alibi proffer. *Id.* We explained that defendant's

claim required a finding that counsel knew, early enough to avoid sanctions, that defendant intended to present an alibi defense. *Id.* ¶ 45. We therefore stated that, to the extent defendant's argument relied on off-the-record discussions with counsel, the issue was better suited for postconviction proceedings than direct appeal. *Id.*

¶ 16    We also concluded that defendant was not prejudiced by counsel's failure to call him to testify. *Id.* ¶¶ 46-47. His only claim of prejudice was that his testimony would have rebutted Mitchell's testimony regarding where he was arrested, which "was but a small portion" of the "overwhelming" evidence against him. *Id.* We noted that Frazier and Mays identified defendant in court as one of the robbers and testified he had a surgical mask and a firearm. *Id.* ¶ 47. The store's surveillance footage showed him entering the store wearing a surgical mask and brandishing a firearm. *Id.* Frazier testified defendant hopped over Frazier's Yukon and a palm print from a Yukon matched defendant's. *Id.* Frazier, Mays, and Graves identified him in the store parking lot as one of the robbers. *Id.* He made an inculpatory statement to the sergeant and the following day confessed to an ASA in a written statement. *Id.* While confessing, he identified himself in a photo from the surveillance footage as the person wearing a surgical mask and pointing a firearm, and a picture of him at the police station depicted him wearing the same clothing as in the surveillance footage. *Id.* Accordingly, the outcome of his trial would not have differed but for counsel's promise that he would testify. *Id.*

¶ 17    Regarding defendant's sentencing argument, the majority affirmed (*id.* ¶ 61), with one justice dissenting from that portion of the opinion. The majority noted that the record only contained the sentencing proceedings of one of defendant's co-offenders, but because the co-offenders reached plea agreements with the State, their sentences could not be compared to

defendant's. *Id.* ¶ 59. The dissent concluded that defendant's sentence was disproportionate to those of his co-offenders and appeared to be a punishment for exercising his right to trial. *Id.* ¶¶ 65-80 (Hyman, J., concurring in part and dissenting in part).

¶ 18    In December 2016, defendant filed a *pro se* petition for relief under the Act. He argued that trial counsel was ineffective for failing to impeach Mitchell. He noted that Mitchell testified at trial that she arrested him in the backyard of the address on the 8600 block of South Calumet after chasing him through an alley and between two garages, but had testified at the suppression hearing that she apprehended him in an alley after a brief foot pursuit. He claimed that counsel's failure to impeach Mitchell was "crucial" given his affidavit averring that he was arrested by a male officer, rather than Mitchell, and not in an alley. He attached his affidavit from the pretrial suppression hearing, which had been notarized in November 2016.

¶ 19    Defendant also raised two other claims. First, defendant argued that trial counsel was ineffective for failing to raise mitigating factors from his presentence investigation report (PSI) at the sentencing hearing. Second, defendant argued that counsel on direct appeal was ineffective for failing to argue that his sentence was a "trial tax" given the lighter sentences his co-offenders received despite their more serious criminal histories, citing the partial dissent from our opinion on direct appeal.

¶ 20    In April 2017, the circuit court summarily dismissed the petition, finding that defendant's claims were frivolous and patently without merit. In an agreed order, we reversed as the dismissal occurred more than 90 days after the petition's filing. *People v. Gordon*, No. 1-17-1666 (2019) (dispositional order).

¶ 21    On remand, the court appointed postconviction counsel. On February 4, 2021, counsel filed a certificate pursuant to Supreme Court Rule 651(c) (eff. July 1, 2017), stating that he consulted with defendant by mail and telephone to ascertain defendant's contentions, examined the record and report of proceedings from defendant's trial, and "conducted additional investigation in this case as it pertains to [defendant's] post-conviction petition." The certificate further noted that postconviction counsel was supplementing defendant's petition with transcripts of his co-offenders' sentencing hearings to support defendant's trial tax argument. The certificate lastly explained that postconviction counsel did not prepare a supplemental petition as defendant's *pro se* petition and the supplemental exhibits adequately stated defendant's claims. Along with the certificate, counsel filed the supplemental exhibits, a copy of our opinion on direct appeal, and the transcript of defendant's sentencing hearing.

¶ 22    The State filed a motion to dismiss. The State argued that defendant forfeited his claim that trial counsel was ineffective for failing to impeach Mitchell as he presented no evidence outside the record to support the claim. Moreover, as her testimony about where she arrested defendant did not relate to the elements of his offense, he could not establish that trial counsel acted deficiently or that any deficiency prejudiced him. The State further argued that his claim regarding his PSI was forfeited and he could not establish deficiency or prejudice as the trial court stated it read the PSI before imposing sentence. Lastly, the State contended that defendant's trial tax claim was barred by *res judicata* as counsel on direct appeal argued that his sentence was disparate to his co-offenders', and defendant could not show prejudice as he could not show the trial court abused its discretion when imposing sentence.

¶ 23    Postconviction counsel filed a response. Counsel argued that defendant's trial tax claim was not forfeited or barred by *res judicata* as defendant's counsel on direct appeal only provided this court with the transcript of one of defendant's co-offenders' sentencing hearings. Given the opinion on direct appeal, counsel argued that the court should advance defendant's trial tax claim to the third-stage to determine whether we may have reached a different result on direct appeal had we been able to review both transcripts of his co-offenders' sentencing hearings. Regarding defendant's claims that trial counsel was ineffective, counsel stated that defendant "relies on those claims as alleged in the post-conviction petition and attached affidavit." Postconviction counsel also filed a "substitute" of the supplemental exhibits counsel had previously filed, comprising the same documents previously submitted.

¶ 24    On July 9, 2021, the court heard argument on the State's motion. The State repeated the arguments from its motion. Postconviction counsel argued that the record did not show what weight the sentencing court gave defendant's PSI, his trial tax claim was not barred by forfeiture or *res judicata*, and the court should advance that claim now that he had supplied the transcript of both co-offenders' sentencing hearings. Regarding the claim about impeaching Mitchell, postconviction counsel stated defendant would stand on the petition and counsel would not discuss it.

¶ 25    On December 10, 2021, the circuit court granted the State's motion and dismissed the petition. In a written order, the court found that defendant's claim about impeaching Mitchell was forfeited and that impeaching her would not have changed the outcome of his trial. His PSI claim was also forfeited, and the trial court stated at sentencing that it had considered the PSI. Counsel on direct appeal raised the trial tax issue, this court decided it, and his sentence was appropriate.

The circuit court thus concluded that defendant failed to make a substantial showing of a constitutional violation.

¶ 26    Defendant now appeals. In this court, he does not challenge the circuit court's ruling that his petition failed to make a substantial showing of a constitutional violation. Rather, he argues that postconviction counsel failed to provide reasonable assistance under Rule 651(c). He contends that postconviction counsel should have amended his *pro se* claim that trial counsel was ineffective for failing to impeach Mitchell into a claim that trial counsel was ineffective for failing to timely disclose to the State that defendant intended to testify to an alibi defense. Failing to do so, according to defendant, was a failure to adequately investigate and present his claim.

¶ 27    The Act provides a three-stage mechanism for a defendant to claim a violation of his constitutional rights. *People v. Knapp*, 2020 IL 124992, ¶ 43. At the first stage, within 90 days after a defendant files a petition under the Act, the circuit court shall summarily dismiss the petition if it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2018); *Knapp*, 2020 IL 124992, ¶ 43. If the court does not rule on the petition within 90 days of the petition's filing, the petition automatically advances to the second stage. *People v. Brewer*, 2021 IL App (1st) 182638, ¶ 21. There, the defendant must make a substantial showing of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 35.

¶ 28    At the second stage, the Act affords indigent defendants a right to counsel. 725 ILCS 5/122-4 (West 2018); *People v. Smith*, 2022 IL 126940, ¶ 13. The Act does not entitle defendants to the effective level of assistance mandated by our state and federal constitutions, but only a "reasonable level" of assistance, a "significantly lower" standard. (Internal quotation marks omitted.) *People v. Custer*, 2019 IL 123339, ¶ 30. Rule 651(c) limits the duties of postconviction counsel. *Id.* ¶ 32.

Under Rule 651(c), the record must show that postconviction counsel has (1) "consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights"; (2) "examined the record of the proceedings at the trial"; and (3) "made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 29     Postconviction counsel may create a presumption that he provided reasonable assistance by certifying that he complied with Rule 651(c). *Custer*, 2019 IL 123339, ¶ 32. The defendant bears the burden of overcoming the presumption by demonstrating his attorney failed to substantially comply with Rule 651(c)'s duties. *People v. Landa*, 2020 IL App (1st) 170851, ¶ 46. He may do so by demonstrating that postconviction counsel did not make necessary amendments to the *pro se* petition. *People v. Addison*, 2023 IL 127119, ¶ 21. We review *de novo* whether a Rule 651(c) certificate sufficed to invoke the presumption of reasonable assistance and whether counsel provided reasonable assistance. *Landa*, 2020 IL App (1st) 170851, ¶ 43.

¶ 30     Here, counsel filed a Rule 651(c) certificate providing that he (1) consulted with defendant by mail and phone to ascertain his contentions; (2) examined the record on appeal, including the report of proceedings; (3) "conducted additional investigation" pertaining to the petition; and (4) filed supplemental exhibits supporting one of defendant's claims. Counsel explained in the certificate that he did not prepare a supplemental postconviction petition as defendant's *pro se* petition and the supplemental exhibits adequately set forth defendant's claims. The certificate complied with the form provided in Rule 651(c), and defendant makes no argument otherwise. Thus, defendant must rebut a presumption that counsel provided reasonable assistance. *Id.* ¶ 46.

¶ 31   According to defendant, his *pro se* claim that trial counsel should have impeached Mitchell's testimony about his arrest indicated that he wished trial counsel had asserted his version of events at trial. However, the claim was in improper legal form, as Mitchell could not have been impeached through defendant's affidavit given that the rules of evidence allow only for impeachment with a witness's own prior inconsistent statement. See Ill. R. Evid. 613(b) (eff. Sept. 17, 2019) (discussing admissibility of a witness's prior inconsistent statement). Moreover, according to defendant, our opinion on direct appeal offered an "express invitation" to investigate and challenge trial counsel's performance regarding the alibi defense. We stated it was unclear when trial counsel learned defendant intended to testify and present an alibi defense and that to the extent the issue involved off-the-record discussions between defendant and trial counsel, it was better suited to postconviction proceedings. See *Gordon*, 2016 IL App (1st) 134004, ¶ 45. Therefore, according to defendant, postconviction counsel should have investigated trial counsel's performance and amended defendant's *pro se* claim about impeaching Mitchell into a claim that trial counsel was ineffective for failing to timely disclose that defendant would present an alibi defense.

¶ 32   The State responds that postconviction counsel was not unreasonable for not raising that claim as it was absent from defendant's *pro se* petition. The State further argues that we did not "invite" the alibi claim on direct appeal, noting that we found that it was defendant's decision not to testify and his alibi testimony would only have impeached Mitchell, whose testimony was a small portion of the "overwhelming" evidence against him. *Id.* ¶¶ 43-47. Therefore, we held that the outcome of defendant's trial would not have been different had trial counsel not told the jury defendant would testify. *Id.* ¶ 47.

¶ 33    Defendant argues that, at this point, whether the amended claim would have succeeded is irrelevant, as remand is required whenever counsel fails to adequately comply with Rule 651(c), regardless of a claim's merit. *People v. Suarez*, 224 Ill. 2d 37, 47 (2007); see also *People v. Johnson*, 154 Ill. 2d 227, 246 (1993) (reviewing court cannot presume that circuit court would have dismissed petition without evidentiary hearing if counsel had adequately performed his duties). However, we find that counsel was not unreasonable for declining to amend defendant's *pro se* claim as it was patently without merit and he has not shown counsel could have successfully amended it.

¶ 34    Defendant is correct that, where postconviction counsel fails to provide reasonable assistance, a defendant need not show he was prejudiced because his claims had merit. *Addison*, 2023 IL 127119, ¶¶ 33-38. That does not mean, however, that postconviction counsel performs unreasonably by failing to advance a nonmeritorious claim. Rather, Rule 651(c)'s requirement that postconviction counsel make amendments necessary to adequately present the defendant's contentions does not require counsel to advance "frivolous or spurious claims." *People v. Greer*, 212 Ill. 2d 192, 205 (2004). If an amendment would only further a frivolous or patently nonmeritorious claim, the amendment is not necessary under Rule 651(c). *Id.* Thus, counsel need not pursue claims from a *pro se* petition that counsel believes lack merit. See *People v. Pendleton*, 223 Ill. 2d 458, 474-75 (2006) (if counsel did not include a claim from the *pro se* petition in an amended petition, one may infer that counsel chose not to pursue it); *People v. Bass*, 2018 IL App (1st) 152650, ¶ 16 ("not every petition can be amended to state a substantial constitutional claim"); *People v. Johnson*, 232 Ill. App. 3d 674, 678 (1992) (failure to amend a petition does not establish unreasonable assistance without showing that petition could have been successfully amended).

¶ 35    This is especially so where a petition advances to the second stage because the circuit court failed to make a timely first-stage determination. See *Addison*, 2023 IL 127119, ¶ 26 (finding counsel provided unreasonable assistance where circuit court advanced petition on its merits and counsel pursued *pro se* claims but failed to properly shape them, and distinguishing *Greer*, where petition advanced under 90-day rule and counsel determined it was nonmeritorious (citing *Greer*, 212 Ill. 2d at 200-05)); see also *Bass*, 2018 IL App (1st) 152650, ¶ 19 (where *pro se* petition escapes first-stage review, counsel may determine a petition is frivolous or patently without merit (citing *Greer*, 212 Ill. 2d at 206)). Even where a petition is not frivolous or patently without merit, counsel may nevertheless determine it has an uncurable defect and decline to amend it without providing unreasonable assistance. *Bass*, 2018 IL App (1st) 152650, ¶ 19.

¶ 36    Here, defendant filed his *pro se* petition under the Act in December 2016. The circuit court summarily dismissed it as frivolous or patently without merit in April 2017, more than 90 days after defendant filed the petition. Accordingly, we reversed the dismissal and the circuit court docketed defendant's petition for second-stage proceedings and appointed postconviction counsel. *Gordon*, No. 1-17-1666 (dispositional order). Thus, counsel could evaluate defendant's *pro se* claims and decline to make amendments that counsel determined would not cure a claim's defects. *Bass*, 2018 IL App (1st) 152650, ¶ 19. The record suggests that is what counsel did. Although he did not file an amended petition and elected to stand on the *pro se* claim about impeaching Mitchell without amending or arguing it, he (1) submitted exhibits to support one of defendant's claims, (2) filed a response to the State's motion to dismiss which argued that claim was meritorious and not procedurally defaulted, and (3) at a hearing on the State's motion, argued about both of defendant's other claims.

¶ 37    Thus, to show that postconviction counsel failed to comply with Rule 651(c) by not amending defendant's *pro se* claim that trial counsel was ineffective for failing to impeach Mitchell, defendant must show that counsel could have successfully amended the claim. *Johnson*, 232 Ill. App. 3d at 678 (failure to amend a petition does not establish unreasonable assistance without showing that petition could have been successfully amended). We find that defendant has not made such a showing.

¶ 38    To establish ineffective of assistance of counsel, a defendant must show that counsel performed deficiently and he was prejudiced such that there is a reasonable probability that, absent the deficiency, the outcome of his trial would have been different. See *People v. Pingelton*, 2022 IL 127680, ¶ 53. We find that defendant has not shown that postconviction counsel could establish he suffered prejudice for any failure by trial counsel to impeach Mitchell or notify the State about defendant's alibi defense.

¶ 39    As discussed on direct appeal, the evidence against defendant was overwhelming. *Gordon*, 2016 IL App (1st) 134004, ¶ 47. He was identified in court and on video as one of the robbers, a photograph of him at the police station depicted him wearing the same clothes as the video, he gave detailed inculpatory statements, and his palm print was on a vehicle that the robbers jumped over in an attempt to escape from the store. Given that overwhelming evidence, the outcome of defendant's trial would not have changed had trial counsel impeached Mitchell's testimony that she saw defendant hop a fence behind the store with a firearm and a surgical mask, pursued on foot, and apprehended defendant behind the address on the 8600 block of Calumet. Consequently, defendant's *pro se* claim was without merit and Rule 651(c) did not require postconviction counsel

to advance that claim. *Greer*, 212 Ill. 2d at 205 (counsel need not advance frivolous or spurious claims).

¶ 40    Moreover, defendant has not shown that counsel could have successfully amended his *pro se* claim into a claim that trial counsel was ineffective for failing to timely disclose to the State that defendant would testify to an alibi defense. Defendant maintains that, although he decided not to testify, he only did so because of counsel's deficiency in failing to alert the State to the alibi defense, which opened the possibility that the court would bar him from testifying. However, trial counsel indicated that if defendant chose to testify he would be the defense's only witness. Defendant makes no argument as to how his uncorroborated alibi testimony would have affected the outcome of his trial given the overwhelming evidence against him, which included video and forensic evidence. Thus, he has not shown that postconviction counsel could have successfully amended his petition to state a claim that trial counsel was ineffective regarding the alibi defense. See *Pingelton*, 2022 IL 127680, ¶ 53 (ineffective assistance requires showing that there is a reasonable probability the result of the proceeding would have been different but for counsel's error); *Johnson*, 232 Ill. App. 3d at 678 (failure to amend a petition does not establish unreasonable assistance without showing that petition could have been successfully amended).

¶ 41    Nor does the record establish that postconviction counsel could have established that trial counsel performed deficiently regarding the alibi defense, or failed to investigate whether trial counsel performed deficiently. Defendant contends that the record does not indicate that postconviction counsel spoke with him about trial counsel's failure to timely disclose the alibi defense. He further argues that it is unlikely that trial counsel only learned of defendant's intent to

testify to that information a few days before trial began, as trial counsel litigated a pretrial motion to suppress based on defendant's affidavit that he was arrested while walking on 87th.

¶ 42    However, defendant's arguments on this point disregard Rule 651(c)'s presumption of reasonable assistance. Postconviction counsel averred in the Rule 651(c) certificate that he investigated defendant's *pro se* petition, and the record suggests he was aware of our opinion from defendant's direct appeal. We noted there that the record (1) was unclear as to when trial counsel actually knew defendant intended to testify at trial that he was arrested while walking on 87th, and (2) suggested that defendant kept trial counsel "in the dark" as to whether he would testify and what his testimony would be. *Gordon*, 2016 IL App (1st) 134004, ¶¶ 43, 45.

¶ 43    Defendant's *pro se* petition shed no further light on when trial counsel learned of his intent to testify at trial, and defendant did not prepare an affidavit providing that information. Therefore, the record does not negate the possibility that postconviction counsel investigated that question and learned that there was no factual basis upon which to argue trial counsel performed deficiently. See *People v. Turner*, 2023 IL App (1st) 191503, ¶¶ 37-38, 43-45 (rejecting arguments that counsel should have provided evidence supporting claims where counsel filed Rule 651(c) certificate and record did not negate possibility that counsel determined there was no evidence to support the claims); see also *Johnson*, 154 Ill. 2d at 241 (where petition is not supported by affidavits courts may ordinarily presume that counsel unsuccessfully attempted to obtain supporting affidavits). Further, counsel was not required to explain why he decided to stand on defendant's *pro se* claim as such an explanation may have been contrary to defendant's interests. See *Turner*, 2023 IL App (1st) 191503, ¶¶ 59-61 (postconviction counsel may stand on *pro se* petition without explanation

where counsel determines petition lacks merit, as such an explanation could harm defendant's interests).

¶ 44 Accordingly, defendant has not shown that postconviction counsel failed to comply with Rule 651(c) by providing an unreasonable level of assistance. Postconviction counsel is entitled to a presumption that he provided reasonable assistance. Defendant's *pro se* claim that trial counsel was ineffective for failing to impeach Mitchell was without merit, and defendant has not shown that claim could have been successfully amended or that postconviction counsel failed to investigate whether trial counsel performed deficiently regarding the alibi defense. Consequently, defendant has failed to rebut the presumption that counsel provided reasonable assistance. We therefore affirm the circuit court's judgment.

¶ 45 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 46 Affirmed.